**Mary B. Gage and Stanley K. Gage, Appellants, v. The Village of Wilmette et al., Appellees.**

**Gen. No. 28,352.**

1. EQUITY—*waiver of objection to demurrer while answer is on file.* Though it was irregular to allow a demurrer to a bill as amended while the answer was on file, inasmuch as the demurrer was considered by counsel as being to the bill as amended and was so treated by the chancellor without objection, it will be so considered on appeal.

2. INJUNCTIONS—*necessity of pleading ordinance on which legal right depends.* In a suit to restrain a municipality from interfering with the connections by which it had been supplying water to the premises of complainant, outside the village, where there was no allegation in the pleadings that an ordinance had been passed by the city council providing for the acquisition or construction of a water plant, the court cannot assume that the municipality, because it supplied water, was operating a water plant under the provisions of the Public Utilities Act, allowing such outside supply, and which provides that no city shall proceed to acquire or construct any public utility until an ordinance providing therefor has been passed and submitted to the electors and approved by a majority voting thereon.

3. INJUNCTIONS—*sufficiency of allegations of authority of city to furnish water.* In a suit to restrain a municipality from cutting off the supply which it had been furnishing under contract to the premises of complainant outside the corporate limits, allegations

that complainants' applied to the village to extend its water pipes and system so as to supply water to complainants' premises and that water was supplied, were not sufficent to allege that the village had a water plant "owned and operated" by it so as to authorize it to sell water outside the municipal limits under section 4 of the Public Utilities Act.

4. INJUNCTIONS—*sufficiency of allegations in bill to restrain city from cutting off water.* In a suit to restrain a village from cutting off the supply of water which it had been furnishing to the premises of complainant outside the village limits the allegations of the complainant, held insufficient to show either an express or implied contract to furnish water in perpetuity or for any definite time.

5. WATERS—*sufficiency of proof of contract to supply water.* The facts that a village supplied water to complainants for a number of years and that the connections with the water pipes of the village were made and paid for by complainants were insufficient to establish a binding obligation on the part of the village to furnish water indefinitely to complainants as owners of outside property.

6. WATERS—*furnishing water no estoppel to cut off service.* The fact that complainants made some pipe connections with the water system of defendant village and for a long time were furnished water to their property outside the village limits did not create an equitable estoppel which would bind defendant to continue the service.

7. INJUNCTIONS—*immaterial allegations of discrimination in cutting off water supply.* In a suit to restrain a village from discontinuing its water supply to the premises of complainant outside the village limits, allegations that defendant unfairly discriminated against complainant, in that it was furnishing water to others outside the village, were immaterial.

8. INJUNCTIONS—*will issue against trespass.* In a proper case a court of equity may take jurisdiction to restrain a trespass.

9. INJUNCTIONS—*sufficiency of allegations of trespass by cutting off water connections.* In a suit to restrain a village from shutting off the water supply to complainant's premises outside the village, allegations that defendant caused a man-hole, in which the connection with defendant's water system was, to be filled up and was constructing another manhole inside the village limits where the water would be shut off, did not state grounds for equitable relief against trespass.

Appeal from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Affirmed. Opinion filed April 30, 1924. *Certiorari* denied by Supreme Court (making opinion final).

NEWTON A. PARTRIDGE, for appellants.

FREDERICK B. CROSSLEY, for appellees; ELMER M. LEESMAN, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is a bill for an injunction filed by Mary B. Gage and Stanley K. Gage, complainants, in the circuit court of Cook county, on November 14, 1922, against the Village of Wilmette and others, to restrain them from interfering with a certain manhole in Sheridan Road outside of the Village of Wilmette, and from cutting off and interfering with the water supply to certain premises of the complainants.

The bill of complaint sets up the following: That the complainants own certain lots which are partly within and partly without the corporate limits of the Village of Wilmette, upon which lots there is a certain dwelling house, and out-buildings; that about the year 1911, they "applied in the usual manner" to the Village of Wilmette to extend its water pipes and system so as to supply water to said premises for domestic use; that the Village of Wilmette consented so to do, and that during said year connections were made "with the consent and active co-operation of said village, and said premises were supplied with water by said village, and said village has ever since continued so to supply said water, and has rendered bills in its usual manner for the water so supplied, all which bills have been paid by or on behalf of your orators"; that said water supply has so remained and continued ever since, and now continues, and that the said water supply has been and is made by said village under and pursuant to the lawful right of said village so to do; that the complainants have continuously paid to said village and discharged all bills of

said village for water so supplied, and offered to pay all lawful bills that may be rendered by said village for such water supply; that in the year 1914, they applied to the Village of Wilmette to extend its water supply by connecting its water main in Sheridan Road with a certain 6 inch water main then proposed to be laid by the complainants ''in the portion of Sheridan Road immediately north of and adjoining said village and extending northerly in said Sheridan Road from the Village of Wilmette; that said village consented so to do and actively co-operated in locating the necessary connections; that said village consented and then agreed to charge for water to be supplied by it, the then present rate, which was customarily charged for water supplied for use outside the Village of Wilmette; and that thereupon the complainants made and paid for the said connection, including a certain manhole, so called, containing a shut-off of the said water supply, and which manhole was located in said Sheridan Road on the premises of your orators about 100 feet northerly from and outside of said Village of Wilmette.''

That on or about November 9, 1922, the defendants conspired to injure and damage the complainants by maliciously destroying the manhole in Sheridan Road and caused the workmen and other servants of the village, without any lawful authority and without the knowledge or consent of the complainants, to fill it with sand and cement and concrete, in order to destroy it and its connections; that afterwards, on November 9, 1922, the complainants opened and restored the manhole to its former condition; that thereupon the defendants, in pursuance of their said unlawful conspiracy, on November 9, 1922, again proceeded to fill up the manhole with concrete, reinforced with large pieces of iron, for the purpose of destroying it and its connections.

That the complainants, on or about November 10, 1922, again caused the manhole to be opened, and while

the complainant, Stanley K. Gage, together with two other men, were engaged in that work, the defendants, by their employees, policemen and servants, interrupted the work, and arrested the complainant, Stanley K. Gage, together with four other men who were assisting him, and forcibly took them to the Village Hall before one Justice Mickey, a police magistrate, to examine whatever charges were made or might be made against them; that the charge against them was dropped and they were permitted to depart and to go without day; that the defendants are now putting in a manhole or shut-off in Sheridan Road at or near the north line of and within the Village of Wilmette, upon the water main which provides and supplies water to the premises of the complainants, so as to shut off the water supply from the premises of the complainants, to their great and irrecoverable damage, and without any lawful reason or excuse therefor; that the defendants threaten to shut off said water supply.

That the Village of Wilmette for many years has supplied outside customers—who are not residents of any municipality, not less than fifty in number—with water, some of them through mains not less than 4 inches in diameter.

That section 135 of the Ordinances of the Village of Wilmette expressly provides that for all water supplied to water takers upon premises situated outside of the village limits, there shall be paid $2.50 per thousand cubic feet instead of $1.65, the latter being the amount charged to the residents of the Village of Wilmette.

That the Village of Wilmette has undertaken and assumed the position of a public utility which sells water to customers outside of its corporate limits, and that it is duly authorized and empowered so to do by the statute of the State of Illinois.

That the Village of Wilmette, its officers and agents, are not entitled to discriminate in supplying water

from the water system of said village, and has no right to favor some, as against others, which are or should have been supplied with water by said village through its said system of water supply.

The prayer of the bill is that the defendants may be restrained and enjoined "from interfering with said manhole * * * outside of said village, and from * * * interfering with the usual and customary supply of water to the premises of the complainants," and that an injunction may be issued to that effect.

The bill of complaint was answered by all of the defendants on November 24, 1922. The answer alleges, among other things, that the Village of Wilmette maintains a system of water supply for its citizens and obtains the water from the City of Evanston, which bounds said Village of Wilmette on the south; that Evanston cannot lawfully supply water except for use within the limits of another adjoining city, village or incorporated town; that the complainants and their property for which they seek water service are not within the limits of any city, village or incorporated town; that the furnishing of water to the property of the complainants in the past was unlawful, unauthorized and beyond the corporate power of the Village of Wilmette, and in direct violation of the trust and understanding by which it receives water from Evanston; that no authority appears anywhere in the statutes or law of this state authorizing or empowering the Village of Wilmette to sell water outside of its limits, and that the ordinance, of the village referred to in the bill of complaint, is void so far as it refers to water supply outside of the Village of Wilmette.

On November 28, 1922, an order was entered denying the motion of the complainants for a temporary injunction.

On December 8, 1922, by leave of court, the complainants filed an amended bill of complaint in which

they alleged that the Village of Wilmette was engaged in supplying water for compensation to a large number of consumers of water outside of the boundaries of the Village of Wilmette; that the policy and election of said village so so do was evidenced by numerous resolutions and orders of said village.

On the same day, defendants were ordered to plead, answer or demur within ten days. On December 18, 1922, a general demurrer was filed on behalf of the defendant, the Village of Wilmette.

On January 15, 1923, on motion of counsel for the defendants, it was ordered that "the demurrer of the defendants" as filed to the amendment to the bill of complaint, stand as a demurrer to the bill of complaint as by said amendment amended. The Chancellor then sustained the demurrer to the bill of complaint as amended, and the complainants electing to stand by "their said bill of complaint as thus amended," it was ordered that "said bill of complaint as thus amended" be dismissed for want of equity. From that order, the complainants took this appeal.

At the outset, on behalf of the complainants, it is urged, as a matter of procedure, that it was error for the Chancellor to allow the demurrer to the bill as amended while the answer was on file. Such practice, of course, is irregular. *Bond v. Pennsylvania Co.*, 171 Ill. 508. The answer should have been withdrawn. Inasmuch, however, as the demurrer was considered by counsel as being to the bill as amended, and was so treated by the Chancellor, and without objection, we shall consider it in the same manner here.

The question then arises, do the facts, which are well pleaded in the bill of complaint as amended, and without considering the contents of the answer, entitle complainants to an injunction as prayed?

It is urged in the affirmative that the allegations, assuming them to be true, show (1) that the Village of Wilmette had the right to supply water at a profit

to outsiders; (2) that on April 27, 1914, an express contract was made between the complainants and the Village of Wilmette, which has never been revoked by notice or otherwise; (3) that the officers of the Village of Wilmette illegally discriminated against the complainants as outside water takers; and (4) that to threaten destruction of the manhole constituted of itself sufficient grounds for an injunction.

(1) Did the Village of Wilmette have the right to supply water at a profit to outsiders? Outside of the allegation that the Village of Wilmette had been supplying complainants with water since the year 1911, there is nothing to show that there was an obligation on that village to furnish water to persons outside of its corporate limits. Counsel for the complainants argue that as section 4 of the Act of June 26, 1913, amended June 27, 1921 [Cahill's Ill. St. ch. 111a, ¶ 4], provides that any city may "sell water within and without the city from any water plant owned and operated by the city" and as it must be inferred from the allegations that the Village of Wilmette did supply water to its residents and certain outsiders, it follows that the Village of Wilmette had a "water plant owned and operated by the city," and so was entitled to sell water to outsiders if it saw fit to do so; and, further, having adopted the policy of supplying water to outsiders, though not compelled to do so, and having led the complainants to expend money and time in making water connections, it is not now entitled to cut off their supply, especially while continuing to supply others in a similar situation.

Section 3 of the Public Utilities Act [Cahill's Ill. St. ch. 111a, ¶ 3] provides that no city shall proceed to acquire or construct any public utility under the act "until an ordinance of the city council providing therefor has been duly passed and submitted to the electors of such city and approved by a majority of those voting thereon." There is no allegation in the com-

plainants pleadings that such an ordinance was ever passed, so that we are not entitled to assume that the Village of Wilmette was operating a water plant under the provisions of the Public Utilities Act. Section 4 of that Act [Cahill's Ill. St. ch. 111a, ¶ 4] provides, however, that any city "may without such submission and approval sell water within and without the city from any water plant owned and operated by the city." We are not informed by the pleadings whether or not the Village of Wilmette owned and operated a water plant. It is true that it is alleged that the complainants applied to the Village of Wilmette "to extend its water pipes and system so as to supply water for domestic use" to the complainants' premises, and that water was supplied. That, however, does not seem to be sufficient, for it may be that the Village of Wilmette obtained its water under contract from a neighboring municipality, such as the City of Evanston (which is suggested by the allegations of the answer and the briefs of counsel for both sides), and it could not be contended with reason that the words, "owned and operated by the city," as used in section 4, cover a situation where the municipality gets its water by contract second-hand, through a "water plant owned and operated" by a contiguous municipality.

(2)    But, assuming that the Village of Wilmette had authority to sell water, to outsiders, do the allegations of the bill of complaint sufficiently allege that on April 27, 1914, or at any other time, an express contract was made between the complainants and the Village of Wilmette which still remains in force? It is contended on behalf of the complainants that there was "an implied contract under the facts set out in connection with the connections made in 1911," and that "an express contract was made by the application of Stanley K. Gage, April 27, 1914, and the resolution of the Village Board of April 28, 1914." The allegations are that the complainants applied in the usual

manner to the Village of Wilmette to extend its water
pipes and system so as to supply water to the com-
plainants' premises for domestic use; that the Village
of Wilmette consented so to do, and that during the
year 1911, connections were made with the consent and
active co-operation of the Village of Wilmette, and the
premises supplied with water, and that the Village of
Wilmette has ever since continued so to supply said
water, and has rendered bills in its usual manner for
the water so supplied; that in 1914 they applied to the
Village of Wilmette to extend its water supply by con-
necting its water main in Sheridan Road with a cer-
tain 6 inch water main then proposed to be laid by
the complainants in Sheridan Road; that the Village
of Wilmette consented so to do, and co-operated in
locating the necessary connections; that it consented
and then agreed to charge for water to be supplied
by it at the then present rate for water supplied for
use outside the village limits, and that thereupon
the complainants made and paid for the said connec-
tion, including the said manhole, so-called, containing
a shut-off which manhole was located in Sheridan
Road outside the Village of Wilmette.   We do not
think the allegations on that subject show either an
implied or express contract to furnish water in per-
petuity, or for any definite term, to the complainants.
It is contended for the complainants that the Village
of Wilmette, having adopted the policy to supply
water to takers located outside of the Village and hav-
ing led the complainants to expend money and time
in making the authorized connections, "it must now
act fairly toward them and must not unfairly discrim-
inate against them by cutting off their supply of water
while continuing the supply of others" in a similar
situation.   That contention is untenable, and the cases
cited in the brief of counsel for the complainants do
not support it.   Evidently, from the allegations of the
bill, no definite binding contract was made.   It is true,

that it is alleged that water was supplied by the Village of Wilmette to the complainants for a number of years, and that the connections with the water pipes of the Village of Wilmette were made and paid for by complainants; but that is not enough to establish a binding obligation on the part of the Village of Wilmette to furnish water indefinitely to the complainants, as owners of outside property.

In *Childs v. City of Columbia*, 87 S. C. 566, where the city owned the water supply system and had furnished the plaintiff's property outside of the city limits with water from its mains, for about ten years, for a certain charge, and then notified the plaintiff of its intention to charge what was called an exorbitant rate, and threatened to cut off the water supply if the rate was not agreed to, the court said, in considering the right of the plaintiff, in that case:

"The fatal defect of the complaint is that it alleges a contract indefinite as to the price and duration of the service, conferring no right on the plaintiff to require the service of the city beyond the day fixed by reasonable notice of its intention to increase the rate charged or to cease altogether to furnish water. * * * But, waiving this feature of indefiniteness, there is no allegation whatever that the plaintiff was bound to take, or that the city was bound to furnish, water for any specified time. Where the parties to a contract express no period for its duration, and no definite time can be implied from the nature of the contract or from the circumstances surrounding them, it would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually."

In *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.*, 254 Ill. 215, the court said:

"No mention is made of any period of time the agreement should continue in force. * * * Furthermore, no time being fixed during which the agreement should continue in force, it was terminable at the will of either party. Citing *Davis v. Fidelity Fire Ins. Co.*,

208 Ill. 375; *Orr v. Ward,* 73 Ill. 318; *Irish v. Dean,* 39 Wis. 562.''

By innuendo, at least, it is suggested for the complainants that, as they made some pipe connections, and then for a long time were furnished water, there arose, apart from the question of contract, something in the nature of an equitable estoppel. We do not think, however, that what was done by the complainants was sufficiently substantial to lead to the conclusion that the Village of Wilmette ought in equity to be bound for all time.

Whether or not the Village of Wilmette was bound to give reasonable notice to the complainants before shutting off the water, we do not consider, as that is a matter which is not seriously urged.

(3)    The allegations, that the Village of Wilmette and its officers unfairly discriminated against the complainants, seem to be immaterial. The rights of the complainants, whatever they are, do not arise by reason of the defendant's dealings with other outsiders.

(4)    Do the allegations concerning the destruction of the manhole and its connections justify an injunction? It is alleged that the defendants, on or about November 9, 1922, conspired to injure the complainants by maliciously destroying the manhole in Sheridan Road by filling it with sand, cement and concrete, so that the manhole and its connections would be permanently disabled and destroyed; that on the same date, the complainants opened up and restored it to its former condition and made it fit for use; that thereafter, in pursuance of their unlawful conspiracy, on or about November 10, 1922, defendants again proceeded to fill up the manhole with concrete, reinforced with large pieces of iron, for the purpose, and with the intent of permanently destroying the manhole and its connections; that on or about the 10th day of November, 1922, the complainants again caused the manhole to be opened, and while excavating it, one of

them, together with other persons, was arrested; and that the defendants are now making a manhole or shut-off located in Sheridan Road within the Village of Wilmette, so as to shut off the water supply to the complainants, to their great and irrevocable damage.

There is no doubt but that in a proper case, a court of equity may take jurisdiction to restrain a trespass. 22 Cyc. 825. And the reason for such jurisdiction is, generally, inadequacy of the remedy at law. Here, however, there is no doubt but that the complainants did have an adequate remedy at law, if such a trespass as is alleged was committed. Mr. Justice Cartwright said, *Mower v. Levings,* 300 Ill. 599, "the bill alleges no fact showing insolvency of the defendant, irreparable damage, a multiplicity of suits, or any fact that would take the case out of the established rule that an injunction will not be granted to restrain a mere trespass." Further, there is no doubt, from the recitation in the bill of complaint, notwithstanding some inconsistency in the words used, that the manhole was located in a public highway known as Sheridan Road.

Bearing in mind the rule that when the extraordinary remedy of injunction is sought, upon the face of the bill, a court of equity is not entitled to supply by assumption important material facts, and, considering all that is alleged in the bill of complaint as amended, we feel bound to conclude that no cause of action is stated, and that the Chancellor was justified in sustaining the demurrer. The decree, therefore, will be affirmed.

*Affirmed.*

O'CONNOR, J. and THOMSON, J. concur.