RALPH ADKISSON *et al.*, Plaintiffs-Appellees, *v.* KENNETH L. OZMENT, Mayor, *et al.*, Defendants-Appellants.

Fifth District   No. 77-187

Opinion filed November 28, 1977.

Charles M. Ferguson, of Harrisburg, and Conger & Elliott, of Carmi, for appellants.

Harris and Lambert, of Marion, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants, Kenneth Ozment, Mayor, the City of Harrisburg, Illinois, a municipal corporation, and Butch Biggs, Jerome Bishop, Charles Dee Barrett, Gene Ragan, as city commissioners of the City of Harrisburg, hereinafter referred to as "the City," appeal from a decree of the circuit court of Saline County permanently enjoining them from increasing certain water rates pursuant to a contract dated August 6, 1957.

Plaintiffs Adkisson, Rittenberry, Borders, Conrad and Swansey as Board of Trustees of the Dorris Heights Water Board Association of Saline County, Illinois, hereinafter referred to as "the Board," brought this action following an attempted termination on June 18, 1975 of the said contract. Defendants counterclaimed, *inter alia*, for a declaration that the August 6, 1957, contract did not constitute a valid, binding agreement or in the alternative that the contract had been lawfully terminated and that a new contract at a new rate had been created.

On August 11, 1975, the circuit court of Saline County issued a temporary injunction which was subsequently dissolved on September 17, 1975. The final decree, entered January 27, 1977, denied defendants' counterclaim, declared the August 6, 1957, agreement to be a valid contract and permanently enjoined the defendant "from failing to comply with the terms and provisions of said agreement" and "from in any way increasing the water rates of the residents of Dorris Heights, Saline County, Illinois, except pursuant to the provisions set forth in said agreement."

Because the agreement in question is relatively brief and because we are compelled to construe the contract as a whole, we quote it in its entirety:

> "THIS AGREEMENT made and entered into this 6th day of August, 1957, by and between the City of Harrisburg, a municipal corporation, party of the first part; and Jim Rittenberry, Lewis

Dalton, Ralph Adkisson, William Borders and Elmer Holland, members of the Dorris Heights Water Board Association, parties of the second part, as follows:

Party of the first part agrees to furnish water and available pipe to extend the water service to the Dorris Heights community commencing at the connection at the housing project in Wilmoth Addition and run North to Dorris Heights Main Road to the distance equivalent to the available pipe owned by the city of Harrisburg for the use and benefit of the parties of the second part and for other prospective water users complying with the terms of this agreement.

Parties of the second part promise and agree to install, maintain and secure the right-of-way for the installation of said pipe to the users thereof and to cause to be installed a separate water meter for each user of water and to install the said meters.

It is understood and agreed that the said water line shall be under the supervision, maintenance, control, and rules of the Dorris Heights Water Board until such time, if and when, the said territory should be incorporated into the city limits of the city of Harrisburg.

It is understood and agreed that water shall be billed by the party of the first part to the users in accordance with the current rates existing in the city of Harrisburg, and that the users shall be subject to all of the Ordinances of the city of Harrisburg and the rules and regulations of the Water Department of said City."

■■ Defendants first contend that the agreement is unenforceable due to an absence of mutuality of obligation. In support of its argument defendants note that the terms of the contract demand nothing of the Board or the residents of Dorris Heights—neither that they use nor pay for the water it is obligated to furnish. While it is true that the contract does not explicitly require use or payment by plaintiffs, such promises are clearly implied from a reading of the contract as a whole. (*Illinois Commerce Com. v. Central Illinois Public Service Co.*, 25 Ill. App. 3d 79, 322 N.E.2d 520; *Cook-Master, Inc. v. Nicro Steel Products, Inc.*, 339 Ill. App. 519, 90 N.E.2d 657.) In *Thebest Laundry & Cleaning Co. v. Duffy*, 293 Ill. App. 252, 12 N.E.2d 235, the court quoted from a New York opinion (*Grossman v. Schenker*, 206 N.Y. 466, 469), where it was stated:

"A contract includes not only what the parties said but also what is necessarily to be implied from what they said."

We feel that the language of the contract in this case necessarily implied a promise to use the water furnished and to pay for the service as billed.

■■ Nevertheless, we recognize that even contracts which are defective due to a lack of mutuality at inception may be cured by

performance in conformance therewith (*Air Conditioning Training Corp. v. Majer*, 324 Ill. App. 387, 58 N.E.2d 294). In this case the plaintiffs performed the implied promises of the contract using and paying for the water supply for approximately 18 years. Thus, we refuse to accept defendants' contention that the contract was void for lack of mutuality of obligation.

The City alleges alternatively that regardless of mutuality the contract was for an indefinite duration and therefore terminable by either side upon reasonable notice. It contends that reasonable notice was provided by its June 18, 1975 letter sent to plaintiffs. The letter provided in pertinent part:

"To the extent that the Agreement previously entered into with the Buena Vista Water Board Association, the Dorris Heights Water Board Association and the Wilmoth Addition Water Board may constitute contracts for water supply, they are hereby terminated.

All water customers outside the City limits shall be charged at double the inside water rates, with the exception of the Water Districts.

The City will be glad to give Dorris Heights, Buena Vista and Wilmoth Addition Water Boards the opportunity of combining your three Water Boards into one water district and placing a master meter at the City limits and your District billing their own customers, or pay double the rate of the inside water rates and we will bill your customers as in the past.

If we have not heard from you within thirty (30) days of the date of this letter we will assume you wish to pay the double rate."

Plaintiffs, on the other hand, assert the alleged termination was merely a guise for breaching the contract. They argue that by continuing to provide water at a different rate than that applicable within the city of Harrisburg, the City has breached the price term specified in the contract. The Board further contends that the contract is either perpetual or terminable only upon the designated event. In support of this argument the Board refers to the language of paragraph 4 of the agreement which provides that upon the annexation of Dorris Heights to the City of Harrisburg, the Board shall be relieved of its duty to supervise, maintain and control the water line. The Board urges that this condition extends to the duration of the entire contract itself. We disagree. When the agreement is taken as a whole, it is clear that this provision relates merely to the maintenance, supervision and control of the water line. In order to bind the parties to such a restrictive condition as to duration, we feel more precise language would be necessary. In construing the meaning of words in a contract a court attaches paramount importance to the intention of

the parties. Had the parties intended annexation as the terminating event to the duration of the contract, such could easily have been expressed.

Moreover, we feel that the Board has mistakenly attached undue significance to the use of the term "water line" in this paragraph of the agreement. It argues that since "pipe" was the term used in the previous paragraphs the new term includes the water which runs through the pipe; hence, the paragraph refers not so much to maintenance of the hardware but rather to the water system itself. Again, we disagree. The term "water line" could just as easily be interpreted to mean valves, meters, etc., in addition to the pipe used to carry the water. Thus, upon a close reading of the contract, we hold that no termination date is specified therein.

■■ ■ We note that according to Illinois law, the absence of a termination date does not necessarily void a contract. (*Maimon v. Telman*, 40 Ill. 2d 535, 240 N.E.2d 652.) However, where no termination date is ascertainable from the language itself, courts must look to surrounding circumstances to discover the intention of the parties. The second paragraph of the agreement in question obviously contemplated a continuing relationship as evidenced by reference to "other prospective water users." Our task now is to determine whether or not the parties intended that the contract run forever.

Generally, perpetual contracts are not favored in the law, as stated in the third edition of Williston's Treatise on Contracts:

> "It is not often that a promise will properly be interpreted as calling for perpetual performance. Only in such negative promises as to forbear suit or not to carry on a business or occupation is so broad an interpretation likely to be permissible. More commonly the true interpretation will mean some period short of infinity; and partly in order to carry out the supposed actual intention of the parties and partly, doubtless, in order to prevent an offer or agreement from being ineffectual because too indefinite, courts will, where the contract contemplates a single act or exchange of acts, unless the circumstances show a contrary intention, interpret a promise which does not in terms state the time of performance as intending a performance in a reasonable time." (1 Williston on Contracts §38 (3d ed.).)

Similarly, "a contract which provides that it is to continue for a more or less indefinite period may be held to continue for a reasonable time under the circumstances. Indeed, it is said to be the general rule that the law implies a reasonable time where the continuation of a contract is without definite duration." 17 Am. Jur. 2d *Contracts* §486.

We emphasize that the City abided by the contract in this case for a period of 18 years. While we do not attempt to define the precise

boundaries of what is or is not a reasonable time, under the circumstances we deem compliance for 18 years to be within the limitation.

■■ Defendants argue that since the contract is executory as to future delivery of water and since no provision is made for duration the contract is terminable at will. The court in *Stein v. Isse Koch & Co., Inc.*, 350 Ill. App. 171, 176, 112 N.E.2d 491, summarized the law stating:

"A contract calling for continual performance and containing no provision for its duration is ordinarily terminable at will."

Under the facts of that case, however, the court was able to ascertain a definite duration from the words of the agreement. Many other Illinois authorities are in accord with the stated view. 12 Ill. L. & Prac. *Contracts* §291; *Orr v. Ward*, 73 Ill. 318; *Schoen v. Caterpillar Tractor Co.*, 103 Ill. App. 2d 197, 243 N.E.2d 31; *Kraftco Corp. v. Kolbus*, 1 Ill. App. 3d 635, 274 N.E.2d 153; see also 10 E. McQuillin, Municipal Corporations §29.100 (3d ed. rev. vol. 1966).

In a case factually analogous to the one at hand, the Supreme Court of Illinois affirmed the granting of a demurrer in an action to enjoin the termination of the contract to supply water. In *Gage v. Village of Wilmette*, 233 Ill. App. 30, *affirmed*, 315 Ill. 328, 146 N.E. 325, the complainant owned certain property located outside the city limits of Wilmette. The city had supplied water to the property pursuant to an express or implied agreement; however, no time had ever been stated regarding the duration of the contract. The appellate court held that the Village of Wilmette could lawfully terminate its agreement to supply water to the property in question. Quoting from a South Carolina case, *Childs v. City of Columbia*, 87 S.C. 566, 70 S.E. 296, it stated:

"In *Childs v. City of Columbia*, 87 S.C. 566, where the city owned the water supply system and had furnished the plaintiff's property outside of the city limits with water from its mains, for about ten years, for a certain charge, and then notified the plaintiff of its intention to charge what was called an exorbitant rate [four times the rate applicable to city residents], and threatened to cut off the water supply if the rate was not agreed to, the court said, in considering the right of the plaintiff, in that case:

'The fatal defect of the complaint is that it alleges a contract indefinite as to the price and duration of the service, conferring no right on the plaintiff to require the service of the city beyond the day fixed by reasonable notice of its intention to increase the rate charged or to cease altogether to furnish water. * * * But, waiving this feature of indefiniteness, there is no allegation whatever that the plaintiff was bound to take, or that the city was bound to furnish, water for any specified time. Where the parties to a

contract express no period for its duration, and no definite time can be implied from the nature of the contract or from the circumstances surrounding them, it would be unreasonable to impute to the parties an intention to make a contract binding themselves perpetually.' " 233 Ill. App. 30, 40.

■■ ■ Finally, the Board contends that due to its reliance on the contract, the residents of Dorris Heights expended $47,000 in installation costs. Thus, the Board argues, the doctrine of equitable estoppel should be imposed to deny the City a right of termination. In effect, such a holding would be to denominate the City of Harrisburg as a public utility. This we are not prepared to do. The City of Harrisburg was under no initial obligation to supply water to the residents of Dorris Heights. Although it performed under the contract for 18 years, such period in and of itself gives no right beyond the contract to the plaintiffs. A similar argument was rejected by the appellate court in *Gage v. Village of Wilmette*, where it was stated:

"By innuendo, at least, it is suggested for the complainants that, as they made some pipe connections, and then for a long time were furnished water, there arose, apart from the question of contract, something in the nature of an equitable estoppel. We do not think, however, that what was done by the complainants was sufficiently substantial to lead to the conclusion that the Village of Wilmette ought in equity to be bound for all time." (233 Ill. App. 30, 41.)

Likewise, in *Fulghum v. Town of Selma*, 238 N.C. 100, 104-05, 76 S.E.2d 368, 371, the court explained:

"A municipality which operates its own water works is under no duty in the first instance to furnish water to persons outside its limits. It has the discretionary power, however, to engage in this undertaking. [Citation.] When a municipality exercises this discretionary power, it does not assume the obligations of a public service corporation toward non-resident consumers."

The plaintiffs have enjoyed the benefit of their bargain for 18 years. They are neither residents of the city of Harrisburg nor do they pay taxes to that city. We see no reason why they should continue to so benefit absent a clear provision in the contract. Therefore, we find that the trial court erred in granting a permanent injunction sought by the plaintiffs.

Judgment reversed.

EBERSPACHER and JONES, JJ., concur.