766 F.2d 1007
 FIRST COMMODITY TRADERS, INC., Plaintiff-Appellant,
v.
HEINOLD COMMODITIES, INC., and Vern Pherson, Defendants-Appellees,
v.
FIRST COMMODITY TRADERS, INC., Robert Gardner, Bruce Zins,
and Robert Blankoph, Counterdefendants-Appellants.
 No. 84-2437.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 16, 1985.
Decided June 21, 1985.
 
 1
 Sidney Rosenfeld, Soloman, Rosenfeld, Elliott & Stiefel & Glovka, Ltd., Chicago, Ill., for plaintiff-appellant.
 
 
 2
 William J. Nissen, Sidley & Austin, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before WOOD and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*
 
 
 4
 GRANT, Senior District Judge.
 
 
 5
 Appellants, First Commodity Traders, Inc., Robert Gardner, Bruce Zins, and Robert Blankoph appeal from an order granting partial summary judgment to defendants, Heinold Commodities, Inc. and Vern Pherson. The district court's order is reported at 591 F.Supp. 812 (N.D.Ill.1982). Appellants also challenge the district court's reduction of their request for attorneys' fees, and the court's award of attorneys' fees to appellees. For the reasons set forth below, this court AFFIRMS the judgment and order of the district court.
 
 Facts
 
 6
 On September 1, 1978, appellant, First Commodity Traders, Inc. [hereinafter referred to as FCT] entered into a contract with appellee, Heinold Commodities, Inc. [hereinafter referred to as Heinold] in which FCT agreed to operate a branch office for Heinold for the purpose of selling commodities futures. Appellants, Gardner, Zins and Blankoph, signed as guarantors of the obligations of FCT under the contract. The contract required FCT to solicit brokerage business for Heinold and to comply with all rules, regulations and policies of Heinold, the Commodities Futures Trading Commission and various commodities exchanges. Heinold agreed to split the net profits of this business with FCT. The contract contained no definite termination date; however, either party could terminate it for a breach of any paragraph. Illinois law governed the agreement.
 
 
 7
 Over the course of the relationship, various exchanges found that FCT's principals had violated exchange rules. In November 1979, appellee Vern Pherson became manager of Heinold's New York office. In December 1980, Pherson recommended termination of Heinold's relationship with FCT. At trial, Pherson testified that he had several reasons for his recommendation, including fear of potential harm to Heinold's reputation following disciplinary actions by several commodities exchanges against FCT's principals.
 
 
 8
 In a January 7, 1981 letter, Heinold told FCT that the agreement would be terminated thirty days later. Heinold later extended the termination date to March 20, 1981. Heinold told FCT's attorney that it considered the contract terminable at will. After termination, an accountant reviewed monthly statements Heinold had sent to FCT during the life of the agreement. The accountant concluded that Heinold had undercredited FCT for clearing house rebates by $166,136.17. 591 F.Supp. at 825.
 
 
 9
 FCT filed an eleven-count complaint against Heinold in the Supreme Court of New York alleging unjust enrichment, breach of contract, and tortious interference with economic relationships. FCT sought an equitable accounting and the recovery of customer deficits and attorneys' fees. Heinold counterclaimed against FCT for breach of contract and alternatively for an accounting. Following removal of the case to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. Sec. 1441(c), the parties agreed to transfer the case to the Northern District of Illinois.
 
 
 10
 After two years of pretrial discovery, the district court granted Heinold summary judgment on nine counts of the complaint. Heinold withdrew its counterclaim for breach of contract and an accounting, and conceded liability to FCT for customer deficits in the amount of $11,549.34. Accordingly, the district court dismissed the first nine counts of FCT's complaint and awarded FCT $11,549.34 as recovery of customer deficits and $3,850 in attorneys' fees. The court awarded Heinold $39,042 in attorneys' fees and dismissed the remainder of Heinold's counterclaim. FCT appeals from the district court's judgment. This Court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 FCT raises five questions on appeal:
 
 11
 I. Whether the district court properly granted summary judgment to Heinold on FCT's claim for an equitable accounting;
 
 
 12
 II. Whether the district court properly granted summary judgment dismissing FCT's claim of unjust enrichment;
 
 
 13
 III. Whether the district court properly granted summary judgment to Heinold on FCT's claim of breach of contract;
 
 
 14
 IV. Whether the district court properly granted summary judgment on FCT's claim for the recovery of customer deficits for two customer accounts; and
 
 
 15
 V. Whether the district court properly awarded attorneys' fees?
 
 
 16
 I. Whether the district court properly granted summary judgment to Heinold on FCT's claim for an equitable accounting?
 
 
 17
 FCT requested an equitable accounting covering all transactions that occurred between the parties during the entire life of the agreement. FCT sought to show by the accounting that Heinold had failed to properly reimburse FCT for commissions and money expended for customers' clearance fees. Heinold answered that an account had already been stated between the parties for each month of their contractual relationship.
 
 
 18
 The district court dismissed FCT's claim for an equitable accounting because it found: 1) FCT had failed to raise a genuine issue of fact in support of opening the accounts stated; and 2) FCT had failed to show that its remedy at law was inadequate. 591 F.Supp. at 825.
 
 
 19
 Because an accounting is an equitable remedy, a court has broad discretion to determine whether it is appropriate to order an accounting. Netisingha v. End of the Line, Inc., 107 Ill.App.3d 275, 278, 63 Ill.Dec. 208, 210, 437 N.E.2d 857, 859 (1982). A court may refuse to award an equitable accounting to a party who has an adequate remedy at law. Medtronic, Inc. v. Intermedics, Inc., 725 F.2d 440, 443 (7th Cir.1984). FCT has made no showing why its claims for monies owed could not be identified as damages under its breach of contract claim. 591 F.Supp. at 825. During discovery, FCT had full access to Heinold's records and could ascertain the correct amount of compensation to which FCT was entitled. FCT had an adequate remedy at law and could not resort to the equitable remedy of an accounting.
 
 
 20
 The district court found that a monthly account had been stated between the parties during the period of the agreement. 591 F.Supp. at 823. Heinold sent FCT monthly income and expense statements. FCT acquiesced in the correctness of those statements by failing to object to them within a reasonable time. That acquiescence is sufficient to establish an account stated between the parties. Protestant Hospital Builders Club, Inc. v. Goedde, 98 Ill.App.3d 1028, 1032, 54 Ill.Dec. 399, 403, 424 N.E.2d 1302, 1306 (1981).
 
 
 21
 A court will not open an account stated absent a showing of fraud, omission or mistake. Meeker v. Fowler, 35 Ill.App.3d 313, 318, 341 N.E.2d 412, 415 (1976). FCT offered two affidavits as grounds for opening the accounts stated. Both of those affidavits merely support FCT's allegations by offering conclusory statements unsupported by specific facts. 591 F.Supp. at 825. Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact. Hall v. Printing and Graphic Arts Union, 696 F.2d 494, 500 (7th Cir.1982). FCT has not raised a genuine issue of fact in support of reopening the accounts stated.
 
 
 22
 II. Whether the district court properly granted summary judgment dismissing FCT's claim of unjust enrichment?
 
 
 23
 After Heinold terminated the contract, it retained many of FCT's customers. FCT claimed that retention of those customers unjustly enriched Heinold because Heinold no longer divided its sales commissions with FCT. The district court dismissed FCT's unjust enrichment claim because it found this form of quasi-contractual relief to be inappropriate. 591 F.Supp. at 822.
 
 
 24
 Unjust enrichment is a quasi-contractual theory of recovery. Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties. LaThrop v. Bell Federal Savings & Loan Ass'n, 68 Ill.2d 375, 391, 12 Ill.Dec. 565, 572, 370 N.E.2d 188, 195 (1977), cert. denied, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978).
 
 
 25
 The fact that the agreement between Heinold and FCT did not explicitly provide for allocation of customers or commissions upon termination does not allow FCT to now invoke a quasi-contract remedy. Gordon v. Matthew Bender & Co., Inc., 562 F.Supp. 1286, 1298 (N.D.Ill.1983). In entering into the agreement, FCT assumed the risk of losing customers to Heinold in return for Heinold's trading services. FCT could have, but did not provide for the allocation of this risk under the terms of the contract. FCT may not unilaterally alter the terms of the contract by now claiming unjust enrichment. Industrial Lift Truck Service Corp. v. Mitsubishi Int'l Corp., 104 Ill.App.3d 357, 60 Ill.Dec. 100, 104, 432 N.E.2d 999, 1003 (1982).
 
 
 26
 III. Whether the district court properly granted summary judgment to Heinold on FCT's claim for breach of contract?
 
 
 27
 The district court dismissed FCT's breach of contract claim, finding first: that the contract was terminable at will; and second: that even if the contract had not been terminable at will, Heinold had terminated for cause. FCT challenges both findings.
 
 
 28
 A. Whether the contract was terminable at will?
 
 
 29
 Under Illinois law, contracting parties may terminate at will if their contract contains no specific term of duration. Mann v. Ben Tire Distributors, Ltd., 89 Ill.App.3d 695, 44 Ill.Dec. 869, 870, 411 N.E.2d 1235, 1236 (1980). When no termination date is specified in a contract, courts must look to surrounding circumstances to discover the intention of the parties. Adkisson v. Ozment, 55 Ill.App.3d 108, 112, 12 Ill.Dec. 790, 793, 370 N.E.2d 594, 597 (1977). "[A] contract may be construed to continue until the happening of a specific event, if that appears to have been the intention of the parties." Ricke v. Ricke, 83 Ill.App.3d 1115, 1120, 39 Ill.Dec. 598, 603, 405 N.E.2d 351, 356 (1980). If a contract is terminable upon the occurrence of some event, neither party may terminate at will. Consolidated Laboratories, Inc. v. Shandon Scientific Co., 413 F.2d 208, 212 (7th Cir.1969).
 
 
 30
 Paragraph 17 of the agreement between FCT and Heinold provides that "[e]ither party may unilaterally terminate this Agreement for a breach of any of the paragraphs of this Agreement." 591 F.Supp. at 816. This paragraph sets forth a specific event upon which the contract may be terminated: breach. The circumstances and nature of the agreement indicate the parties' intent to create a relationship terminable for breach, rather than terminable at will. Several other contracts executed between Heinold and FCT's principals, prior to termination of the contract at issue in this case, include specific "at will" termination clauses. Heinold and FCT could have included an "at will" clause in this contract. Instead, the parties provided for termination upon breach. This court may fairly imply from the nature of the contract that the parties did not intend the contract to be terminable at will. Because the contract was not terminable at will, FCT may maintain an action against Heinold for breach of contract if Heinold's termination did not comport with the terms of the agreement.
 
 
 31
 B. Heinold's defense of breach.
 
 
 32
 Although the agreement was not terminable "at will," Heinold's termination comported with the terms of the contract because FCT had breached the agreement. The agreement required FCT to comply fully with all rules, regulations and policies of various commodity exchanges and government agencies that relate to the commodity futures and options brokerage business. The district court found that FCT, through its principals, had violated the rules of commodity exchanges on at least four occasions. 591 F.Supp. at 819. FCT does not dispute that the violations occurred. Because FCT breached the terms of the agreement, Heinold was entitled to terminate pursuant to Paragraph 17 of the agreement.
 
 
 33
 FCT claims that Heinold waived its right to rely on FCT's exchange rules violations as legally adequate cause for termination of the contract. Heinold's termination letters do not specify any reason for termination. In its Answer to the First Amended Complaint, Heinold denied that FCT had performed all the terms of the agreement and denied that Heinold had breached the agreement. Throughout the litigation, Heinold consistently maintained that Heinold terminated the agreement only after FCT's breach. Heinold did not waive its right to rely on the rules violations because it raised that defense at the outset of the litigation.
 
 
 34
 FCT misconstrues the rule in Danberg v. Langman, 318 Ill. 266, 149 N.E. 245 (1925). Danberg precludes a defendant in a breach of contract action from altering the grounds of his defense after the litigation has begun. In Danberg, the defendant's answer alleged that he terminated his contract to buy land because the plaintiff's chain of title was defective. Later, at trial, the defendant sought to prove that the plaintiff held title to only half of the land described in the deed. The court held that the defendant was estopped from shifting his defense at trial. 149 N.E. at 247. Similarly, in Larson v. Johnson, 1 Ill.App.2d 36, 116 N.E.2d 187 (1953), the defendants answered a breach of contract claim by alleging fraud in the execution. After a master found that there had been no fraud in the contract's execution, the defendants sought to shift their position, and claimed that the contract was too indefinite to be enforced. The court held that: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration." 116 N.E.2d at 189 (emphasis added) (citations omitted) (quoting Railway Company v. McCarthy, 96 U.S. (6 Otto) 258, 267, 24 L.Ed. 693 (1877)). In Larson v. Johnson, the court restricted the defendants to their initial defense of fraud. 116 N.E.2d at 192.
 
 
 35
 Although Illinois law requires a defendant in a breach of contract claim to stand by the first defense raised after the litigation has begun, the law does not require that the defense be asserted at the time the contract is terminated. Ordinarily, the party terminating the contract need not explain his reason therefor at the time of termination, provided that some legally adequate reason exists. Sterling Emery Wheel Co. v. Magee, 40 Ill.App. 340, 343 (1891). If the legal excuse for nonperformance exists at the time of termination, the terminating party may rely on the excuse in a breach of contract action even though he was unaware that the excuse existed at the time he terminated. College Point Boat Corp. v. United States, 267 U.S. 12, 15-16, 45 S.Ct. 199, 200-201, 69 L.Ed. 490 (1925). For example, in Kantzler v. Grant, 2 Ill.App. 236 (1878), the defendant breached his contract to marry the plaintiff. The defendant offered no reason for his breach. At trial, the defendant pleaded and proved that the plaintiff suffered from venereal disease. The Illinois Court of Appeals upheld the defendant's right to raise that defense at trial. The court held: "If facts exist which in law constitute a perfect defense to an action, it is not perceived why a defendant may not avail himself thereof for the first time, if you please, on the trial of the cause." 2 Ill.App. at 238.
 
 
 36
 Heinold raised the issue of FCT's breach at the outset of the litigation, preserving its right to rely on that defense. Therefore, Heinold did not waive its right to rely on that defense by failing to give that reason when it terminated the contract and the district court properly dismissed FCT's breach of contract claim.
 
 
 37
 IV. Whether the district court properly granted summary judgment on FCT's claim for recovery of customer deficits for two customer accounts?
 
 
 38
 The district court granted summary judgment to Heinold on FCT's claim for the recovery of deficits paid by FCT on the accounts of two customers, Weiss and York. The court found that after the agreement was made, FCT signed a letter in which it accepted responsibility for 80% of the Weiss deficit, and entered into an oral settlement of the York deficit. 591 F.Supp. at 825-26. The district court found that FCT failed to raise an issue as to the validity of either of these two settlement agreements. 591 F.Supp. at 826. Reviewing the record in the light most favorable to FCT, this Court finds no genuine issue as to the validity of the two settlement agreements. Accordingly, this Court must affirm the summary judgment. Thornton v. Evans, 692 F.2d 1064, 1074 (7th Cir.1982).V. Whether the district court properly awarded partial attorneys' fees to each party?
 
 
 39
 FCT and Heinold both sought attorneys' fees pursuant to Paragraph 15 of the agreement, which provides: "15) Should any action or claim be brought under the terms hereof, for arbitration or in any court, the parties agree that the nonprevailing party shall fully reimburse the prevailing party for all costs incurred with regard to such claim or action including reasonable attorneys' fees."
 
 
 40
 FCT prevailed on Counts X and XI of the first amended complaint. The district court dismissed Counts I through IX of the first amended complaint. The district court awarded some attorneys' fees to each of the parties, on the premise that each was a prevailing party because each had "prevailed" on part of the action. The court awarded $3,850 in attorneys' fees to FCT and $39,042 in attorneys' fees to Heinold. Those figures represent a percentage of actual fees incurred equivalent to the ratio of counts prevailed upon to total number of counts. The court found that the fees were customary fees charged by the parties' attorneys and that neither party disputed the number of hours worked.
 
 
 41
 FCT now claims that it was the only prevailing party under Paragraph 15 and should recover all of its attorneys' fees. FCT's attorneys' fees for prosecuting this case total $47,757.17.
 
 
 42
 Because this is a diversity action, the question whether attorneys' fees may be awarded must be decided under Illinois law. Tryforos v. Icarian Development Company, S.A., 518 F.2d 1258, 1265 (7th Cir.1975). Under Illinois law, a successful litigant may not recover attorneys' fees "in the absence of a statute, agreement or stipulation specifically authorizing the allowance of such costs." Evink v. Pekin Insurance Company, 122 Ill.App.3d 246, 77 Ill.Dec. 647, 650, 460 N.E.2d 1211, 1214 (1984). In this case, the parties agreed that in the event of a dispute, attorneys' fees would be awarded to the "prevailing party." This Court must construe that agreement according to the rules of construction within Illinois contract law. Merrill Tenant Council v. United States Department of Housing and Urban Development, 638 F.2d 1086, 1092 (7th Cir.1981).
 
 
 43
 Paragraph 15 of the agreement distinguishes between "claims" and "actions." In this one action, FCT brought seven separate claims. It is not clear from the terms of the agreement whether the parties intended this distinction to authorize an award of attorneys' fees to the "prevailing party" on a count by count basis. Where the terms of an agreement are not clear, the court will construe the contract to give effect to the intent of the parties. Ricke v. Ricke, 39 Ill.Dec. at 601, 405 N.E.2d at 354. "The intention of the parties will be ascertained by an examination of all the facts and circumstances manifested by the evidence, including ... the purpose or object for which [the contract] was created." Id. When ascertaining intent, the court may construe the words used in the contract according to their "ordinary, natural and commonly accepted meaning unless it clearly appears that the parties intended to ascribe to them a peculiar or unusual meaning." First National Bank of LaGrange v. Mid-States Engineering & Sales, Inc., 103 Ill.App.3d 572, 574, 59 Ill.Dec. 295, 296, 431 N.E.2d 1052, 1053 (1981).
 
 
 44
 In this case, the district court ascertained the intended meaning of "prevailing party" in Paragraph 15 by examining the purpose for which Paragraph 15 was created. The purpose of Paragraph 15 is to reimburse a party for the expense of enforcing the agreement through arbitration or suit. The paragraph forces the party in error to bear the cost of that enforcement. The paragraph explicitly includes attorneys' fees in the definition of costs.
 
 
 45
 The purpose of Paragraph 15 is similar to the purpose of Rule 54(d) of the Federal Rules of Civil Procedure, which provides: "Costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d). Rule 54(d) does not itself authorize awards of attorneys' fees as costs. Nevertheless, the commonly accepted meaning of "prevailing party" is the meaning it is given within the context of Rule 54(d).
 
 
 46
 As used in Rule 54(d), "prevailing party" means a party who has obtained some relief in an action, even if that party has not sustained all of his or her claims. Holcomb v. United States, 78 F.R.D. 527, 529 (E.D.Wis.1978), aff'd, 622 F.2d 937 (7th Cir.1980). Nevertheless, this court has held that under Rule 54(d) the "prevailing party" is the party who prevails "as to the substantial part of the litigation." Best Medium Publishing Company, Inc. v. National Insider, Inc., 385 F.2d 384, 386 (7th Cir.), cert. denied, 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150 (1967). Under Rule 54(d), "[w]here there is a dismissal of an action, even where such dismissal is voluntary and without prejudice, the defendant is the prevailing party." 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 54.70 (2d ed. 1985).
 
 
 47
 FCT was not the prevailing party according to the commonly accepted definition of prevailing party from Rule 54(d). FCT cannot be said to have prevailed on a substantial part of the litigation. FCT prevailed on only one of its seven separate claims. The district court dismissed the other six claims. Therefore, Heinold was the prevailing party on six of the seven claims in the action.
 
 
 48
 Under Rule 54(d), the trial court retains wide discretion to determine and award reasonable costs. Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1281 (7th Cir.1983). When awarding fees pursuant to Rule 54(d), "courts must give considerable attention to the 'relationship between the extent of success and the amount of the fee award,' ... especially when the plaintiff has succeeded on only some of her claims." Id. (citation omitted) (quoting Hensley v. Eckerhart, 461 U.S. 424, 438, 103 S.Ct. 1933, 1942, 76 L.Ed.2d 40 (1983)).
 
 
 49
 Applying Rule 54 standards to this award of attorneys' fees, the district court properly considered the extent of each party's success to determine fee awards that would be reasonable under Paragraph 15. The district court did not abuse its discretion when it reduced FCT's award of attorneys' fees in proportion to the extent of FCT's success on one of the seven claims. Furthermore, the district court did not abuse its discretion when it awarded attorneys' fees to Heinold in proportion to Heinold's success on six of the seven claims.
 
 Conclusion
 
 50
 For the above reasons, this court AFFIRMS the judgment of the district court for Heinold on Counts I through IX of the First Amended Complaint, and the judgment for FCT on Counts X and XI.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation