CYRIL RICKE *et al.*, Plaintiffs-Appellants, *v.* LYNN RICKE *et al.*, Defendants-Appellees.

Second District   No. 79-31

Opinion filed May 6, 1980.

James F. Campion, of Wheaton, and Carl W. Kuhn, of Glen Ellyn, for appellants.

Lewis John Craft, of Villa Park, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal from an order denying the issuance of a writ of replevin; the order was based on the trial court's construction of a certain lease and attachments thereto. Plaintiff Cyril Ricke is the principal officer of plaintiff Security Shutter Corp.; defendant Lynn Ricke, Cyril Ricke's son, is the principal officer of defendant Security Molding, Inc. (Reference to the plaintiff or defendant shall refer to the respective corporation unless otherwise indicated.)

The trial court's order provided that defendant could validly exercise an option to purchase machinery and all molds specified on certain pages attached to the lease. On appeal, plaintiff contends that the trial court erred in denying the writ of replevin, in construing the lease option to include certain molds, in finding that the lease was not cancellable at the will of the plaintiff, and in finding that defendant did not breach the agreement. Although factual issues were formed by the complaint, answer, and reply filed by the parties, no evidence was offered by either side; the decision of the trial judge was based solely on the construction of the written instrument and the five pages attached.

On September 1, 1974, plaintiff and defendant entered into a written agreement for the lease of equipment to defendant, which equipment was to be described on a "list" attached thereto. The agreement provided an option for lessee to purchase said equipment at any time after October 1, 1978, at the price of $32,500, reduced by rents paid to that time, less 7 percent interest on the rents. The agreement did not state a specific term, but provided that monthly rental was $550, first payment due October 1, 1974. The agreement further provided that defendant must purchase plaintiff's stock parts for $7,000, and assume plaintiff's existing building lease; and that plaintiff would act as the exclusive sales agent of defendant for one year.

Cyril Ricke had, in prior years, acquired machinery and molds for his business; by the lease agreement, he placed the machinery and molds in the possession of Lynn Ricke for the purpose of establishing his son in business. The arrangement between the parties continued for 3½ years. In March 1978 a major dispute arose and plaintiff elected to cancel the lease in order to repossess the machinery and molds and to thereby maintain its parts supply. This action was commenced on September 1, 1978, by plaintiff's petition for a writ of replevin.

After a hearing on October 5, 1978, the trial court denied the issuance of the writ of replevin. The court found that the agreement was a valid lease option agreement, running until October 1, 1978, plus a reasonable period thereafter in which to exercise the option. The court also construed the provision regarding equipment subject to the option to include all machinery and molds on the five pages attached to the agreement. At this hearing, defendant tendered $12,325.49 in open court in the form of a certified check and a cashier's check in payment of the option price. The attorneys for the plaintiff refused to accept the tender, stating that they were unable to ascertain whether the amount was correct. The trial judge ruled that a valid tender had been made.

Since no evidence was adduced by either side at the hearing, the issues on appeal must be resolved by a construction of the lease option agreement and a determination of the validity of the defendant's tender as an exercise of its option.

Inasmuch as the action sounds in replevin, the first issue to be resolved is the right to possession of the property sought to be recovered. The agreement stated that plaintiff agreed to lease to defendant "* * * the following equipment: (See list attached and made a part of this Agreement) * * *" Five pages are attached to the agreement, each having a letterhead as follows: "SECURITY SHUTTER CORP., Division of HEX FASTENER CORP." We describe each in detail thusly: The first page bears a legend stating: "The following molds are owned and the property of the companies listed under each mold."

Several molds are described and under each is the name of a third-party company. The second page is entitled "MACHINERY" and thereunder machines and attachments are described in some detail. The third page is entitled "SECURITY SHUTTER MOLDS" and seven different molds are described thereunder. The fourth page has a legend similar to page one together with the statement "HEX FASTENER CORP. MOLDS"; thereafter three different molds are described. The fifth page has a legend similar to page one together with the statement "SECURITY SHUTTER MOLDS"; thereafter nine different molds are described.

■■ The court will not resort to rules of construction where an agreement itself is clear and unambiguous. However, where the terms of the agreement itself are not clear, or are ambiguous, the court will construe the contract to give effect to the intention of the parties. The intention of the parties will be ascertained by an examination of all the facts and circumstances manifested by the evidence, including the relationship of the parties, the subject matter of the contract, and the purpose or object for which it was created. It should also be noted that a contract will be construed most strongly against the party who prepared it, for the reason that he chose the words to be used and is therefore more responsible for the existence of the ambiguity. *Donahue v. Rockford Showcase & Fixture Co.* (1967), 87 Ill. App. 2d 47, 230 N.E.2d 278.

There is an ambiguity in the agreement in this case with respect to the term "equipment" as used in the body of the lease. The ambiguity is the result of the attachment of certain pages describing machinery and molds, none of which bear the heading "EQUIPMENT." Defendant initially contended that the molds specifically designated as the property of others were intended to remain so, whereas those owned by plaintiff, Security Shutter, and on the list not bearing the legend, should become part of the lease option agreement. Plaintiff claimed that only the list of machinery was intended to become part of the lease. The trial court found that the ambiguity should be resolved in favor of the defendant, and held that the machinery and *all* the molds on the five pages comprised the "equipment" referred to in the agreement.

■ As previously noted, where uncertainty exists, a contract will be construed most strongly against the party who prepared it. In this case, there is no indication in the record as to who actually prepared the lease agreement. However, the letterhead on the five pages attached would indicate that those pages were prepared by the plaintiff and ambiguity therein should be construed with this fact in mind, together with consideration of the agreement itself and the surrounding facts and circumstances.

It should be noted that there is no identification appearing on the separate pages attached which tends to link them together as part of the

agreement. In addition, it appears that the legend at the top of the first page clearly indicates that the molds therein described are owned by and shall remain the property of third-party companies named thereon. The statement clearly reveals ownership by third parties and, accepting this fact, it is only logical to hold that the molds listed on the first page attached were not intended to be subject to defendant's option to purchase. From the relationship of the parties at the time of the agreement, it is reasonable to assume that Cyril Ricke (plaintiff) intended to provide that his son, Lynn Ricke (defendant), be given the option to purchase all machinery and molds that he would use and need in establishing a new business, while still retaining control of this source for a period of at least four years (*i.e.*, the option could not be exercised until October 1, 1978, or later). Accordingly, we hold that the machinery and molds shown on the second, third, fourth and fifth pages are subject to the option provision of the lease, but that the molds listed on the first page are not subject to that option.

Another source of controversy between the parties is the duration of the lease agreement. Plaintiff contends that, in the absence of an express provision as to its duration and considering the stipulation in the agreement for a monthly rental, the agreement should be construed as a month-to-month lease which is terminable at will. Plaintiff further contends that the option to purchase under the lease was terminated when the lease was cancelled. Accordingly, plaintiff asserts that he had the right to immediate possession of the disputed property when he notified defendant that he had elected to cancel the lease. Defendant, on the other hand, claims that the agreement was a lease for a term of years, with the expiration date being a reasonable time after October 1, 1978. The trial court found for defendant, construing the lease to run until October 1, 1978, and for a reasonable time thereafter to enable defendant to exercise the option. The court further found that the agreement was noncancellable until such date, except upon a breach of the agreement by defendant, because by each month's rent paid, the defendant acquired an equity in the equipment, a vested right which could not be defeated by a unilateral cancellation of the agreement by plaintiff.

■■ In Illinois, four essential elements are required to create a valid lease: (1) a definite agreement as to the extent and bounds of the property leased; (2) a definite and agreed term; (3) a definite agreement as to the rental; and (4) the time and manner of payment. (*Bournique v. Williams* (1922), 225 Ill. App. 12.) Plaintiff contends that the absence of a definite term renders the agreement terminable at will. Whether a contract fixing no period of duration is terminable at the option of one of the parties depends upon a construction of the agreement and ascertainment of the intention of the parties. While a contract containing no provision for its

duration is ordinarily terminable at will, such is not the case where a period of duration can fairly be implied from the nature of the contract. The duration may be ascertained by reference to the covenant as to rent, or other provisions which, when construed together, make the parties' intention and purpose clear. (*DePauw University v. United Electric Coal Cos.* (1939), 229 Ill. App. 339, 20 N.E.2d 146.) Where no definite time is fixed, a contract may be construed to continue until the happening of a specific event, if that appears to have been the intention of the parties. A lease which does not actually name the period of tenancy may fix such period by reference to some collateral event if the reference is such that the duration of the term can be ascertained at any time. (*Stanmeyer v. Davis* (1944), 321 Ill. App. 227, 53 N.E.2d 22.) Thus, a contract which is terminable upon the occurrence of an event is not terminable at will, but is "to be enforced according to its terms and the reasonable implications thereof." (*Consolidated Laboratories, Inc. v. Shandon Scientific Co.* (7th Cir. 1969), 413 F.2d 208, 211-12.) The duration of the agreement must be determined from a consideration of the agreement as a whole. Where an option to purchase is not an independent undertaking, but is an integral part of the lease, neither the provision referring to the option nor the provision referring to the lease may be construed as independent covenants. *Sandra Frocks, Inc. v. Ziff* (1947), 397 Ill. 497, 74 N.E.2d 699; *Hindu Incense Manufacturing Co. v. MacKenzie* (1949), 403 Ill. 390, 86 N.E.2d 214.

Applying these principles to the instant case, plaintiff's argument that the agreement between the parties is indefinite as to duration and thus terminable at will is not convincing. The lease was not for an indefinite period of time, but rather it could be terminated by either party upon the occurrence of an event, namely, the exercise of the option by the defendant at any time after October 1, 1978. In our view, this is sufficient to fix the term of the lease agreement.

■■ Moreover, this is the only reasonable interpretation to be drawn from a reading of the agreement as a whole. To hold that this was an indefinite contract, terminable at the will of either party, would be contrary to the intent of the parties and would make the option provision meaningless. It is difficult to believe that the defendant would lease the equipment and pay rent upon it, for which he was receiving a credit against the purchase price, and yet have the lease terminable before October 1, 1978, *i.e.*, before the option could be exercised. When considered together, the provisions of the lease make it abundantly clear that this agreement was a lease for a term of years which would expire at the earliest on October 1, 1978, at which time or within a reasonable time thereafter, the defendant could elect whether or not to exercise its option. Thus, the trial court was

correct in its determination that the agreement could not be cancelled by plaintiff before its expiration, except upon a breach of the agreement by the defendant.

Plaintiff suggests that defendant did breach the terms of the agreement by failing to supply needed plastic parts to plaintiff. This matter was first alluded to in a letter attached to plaintiff's amended reply; however, no evidence was presented on this issue in the trial court. Plaintiff did not testify at trial to an oral agreement supplementing the terms of the written agreement. The law is clear that a question not raised in the pleadings or in any other manner presented to or urged or raised in the trial court, cannot be urged for the first time in a court of review. (*La Placa v. La Placa* (1956), 9 Ill. App. 2d 573, 133 N.E.2d 547 (abstract).) However, the record in this case indicates that the instant question raised at least indirectly by the pleadings and clearly was presented to the trial court in a discussion including plaintiff's and defendant's counsel. Thus, contrary to defendant's assertions, the issue is reviewable by this court. The trial court ruled that the agreement was not contingent upon any duty to furnish parts, and that, therefore, no breach occurred.

The language of the agreement must be construed in order to ascertain the intentions of the parties on this issue. Where the terms of the agreement are clear and unambiguous, the instrument itself is the only source of such intentions. (*Herbert Shaffer Associates, Inc. v. First Bank of Oak Park* (1975), 30 Ill. App. 3d 647, 332 N.E.2d 703.) In the instant case, the lease plainly provided for defendant's purchase of stock parts and the assumption of the building lease. It would seem reasonable to assume that, if a guaranteed source of parts was foremost in the mind of plaintiff, he would have insisted upon such a provision in the agreement. Since no evidence of a contemporaneous oral agreement, nor any other evidence, was adduced at trial, the trial court correctly construed the agreement strictly within its four corners. Therefore, inasmuch as there was no agreement with respect to supplying parts, there was no breach by defendant for which plaintiff was entitled to cancel the agreement.

The trial court specifically stated that it would not rule on the issue of whether defendant's option to purchase was timely and properly exercised by tender in open court. However, the record does indicate the trial court's determination that there was a valid tender, which determination is now challenged on appeal. Defendant tendered two checks in open court to the plaintiff's attorneys, which tender was refused both before and after the hearing on the writ of replevin, on the ground that plaintiff's attorneys were not authorized to accept payment. No other objection to the tender was made.

In Illinois, tender may be made to the plaintiff, or his attorney,

either before or after the commencement of the suit. (Ill. Rev. Stat. 1977, ch. 135, par. 5; *Vollbracht v. Western Union Telegraph Co.* (1920), 219 Ill. App. 563.) It has been held that tender should be allowed by the court if properly made, for it tends to end litigation. (*Harris v. Braverman* (1933). 271 Ill. App. 27.) An objection to the character of tender is waived if not made specific. (*Gradle v. Warner* (1892), 140 Ill. 123, 29 N.E.2d 1118.) Objection to a tender should be made at the time of the tender, and silence is construed as a waiver of any objection not specified. (*Thompson v. Crains* (1920), 294 Ill. 270, 128 N.E. 508.) In the instant case, plaintiff's counsel did not object to the sufficiency of the tender, but stated that they did not know, or have an opportunity to determine if the amount was correct. Therefore, they waived any other objection to the tender, both by silence and by placing their refusal on the ground stated. *Thayer v. Meeker* (1877), 86 Ill. 470.

The evidence as set forth in the record shows that the defendant was at all times ready, willing and able to perform its obligations in order to exercise the option. Thus, we find that the defendant properly and timely exercised its option by tender in open court on October 5, 1978.

For the foregoing reasons, we conclude that the trial court erred in denying the issuance of a writ of replevin for the molds specified on the first page attached to the lease agreement, and we therefore reverse the trial court's finding and judgment with respect thereto. We affirm the trial court's denial of a writ of replevin as to the property specified on the second, third, fourth and fifth pages attached to said agreement. We affirm the trial court's finding as to the noncancellable nature of the lease, which lease was to run until October 1, 1978, and for a reasonable period thereafter, as well as the court's finding that no breach of that agreement occurred. We remand to the trial court with directions that the validity of the tender be recognized and that the defendant be allowed to exercise its option to purchase the property specified on the second, third, fourth and fifth pages attached to said lease, within such time as the trial court finds is reasonable.

Affirmed in part, reversed in part and remanded.

NASH and LINDBERG, JJ., concur.