**H.L. MILLER MACHINE TOOLS, INC., Plaintiff,**

v.

**ACROLOC INCORPORATED and Bayer Industries, Incorporated, Defendants.**

No. 87–1113.

United States District Court, C.D. Illinois, Peoria Division.

Feb. 25, 1988.

Richard Steagall, Nicoara & Steagall, Peoria, Ill., for plaintiff.

John C. Mulgrew, Jr., Davis & Morgan, Peoria, Ill., for defendants.

## ORDER

MIHM, District Judge.

Presently before this Court is the Defendants', Acroloc, Inc. (hereafter Acroloc) and Bayer Industries, Inc.'s (hereafter Bayer) Motion to Dismiss and Strike. Acroloc's and Bayer's Motion to Dismiss is fundamentally based upon the allegation that the contract which is the subject of the Plaintiff, H.L. Miller Machine Tool, Inc.'s (hereafter Miller) Complaint was a contract terminable at will, and therefore, Counts I and II of Miller's Complaint cannot be sustained.

Count I of Miller's Complaint is a diversity action for breach of contract against Bayer, a manufacturer of machine tools, and Acroloc, the distributor of Bayer's machines and tools. Count II of the Complaint seeks compensatory and punitive damages for Bayer's and Acroloc's attempt to interfere with Miller's right to receive a commission on a completed sale of machine tools and its' wrongful withholding of payment of an outstanding commission due Miller. There is no dispute between the parties that Illinois law governs this diversity action.

The contract entered into by Miller and Acroloc, which was acting as the agent of Bayer, is critical to the resolution of this pending Motion to Dismiss. Miller alleges that the contract provided that Miller was to act as the "exclusive distributor" for Acroloc products within the entire State of Illinois, the central and eastern portions of the State of Wisconsin, and the northeastern portion of the State of Indiana.

In its Complaint, Miller alleges that the agreement provided that Miller was to undertake his or its best effort to contract with potential customers, promote Acroloc products, and complete sales to ultimate users of the product. Further, Acroloc was obligated to compensate Miller for its efforts with a 15% commission on the sale of each Acroloc machine during the inception period of the contract. In return, Acroloc would provide both training and customer assistance to Miller's employees and potential customers. Additionally, the contract provided a commission increase to 23% per machine at such time when the training and customer services to potential customers were completed, and Miller was completing sales of Acroloc machines at an average of two per month.

Miller alleges that this contract was confirmed in writing on June 19, 1986, by a letter from Patrick Sullivan, an employee of Acroloc, acting in the scope of actual and apparent authority for Acroloc and within the scope of Acroloc's actual and implied authority for Bayer.

Miller alleges that pursuant to the contract, it undertook substantial effort from June of 1986 through November of 1986 to promote Acroloc machines and product line. Miller asserts that these efforts included: (1) preparation of mass mailings to potential customers; (2) preparation of a number of quotations of price to potential users; (3) incurrence of travel expenses in the amount of $1,249.88, for a former Acroloc employee promoting the Acroloc product line; and (4) the payment of salary for a former Acroloc employee, in the amount of $19,261.94. Miller alleges that it fully performed all conditions and obligations pursuant to the contract. Further, Miller asserts that there was an implied obligation upon each party to act in good faith.

In November of 1986, without notice to Miller and allegedly without cause, Acroloc, acting within its scope of actual or apparent agency, terminated the contract. This termination was confirmed on November 24, 1986.

At the hearing held on October 16, 1987, Miller orally requested the Court to consider Sullivan's June 12, 1986 letter, which discussed the compensation agreement between Miller and the Defendants. The Court granted this Motion and has considered it in reaching its decision in this case.

Acroloc's and Bayer's Motion to Dismiss and Strike presents four contentions: (1) the contract entered into between the parties was terminable at will, and therefore, no claim for breach of contract can be sustained; (2) punitive damages are not recoverable in a breach of contract action; therefore, if this Court determines that Count II of Miller's Complaint is requesting punitive damages for breach of contract, it must be dismissed for failure to state a claim upon which relief can be granted; (3) no fiduciary relationship existed between Miller and either Defendant; therefore, to the extent that Count II is requesting compensatory and punitive damages for breach of fiduciary relationship, it must also be dismissed for failure to state a claim upon which relief can be granted; and (4) to the extent that Count II contains references to an offer of compromise, it must be stricken as irrelevant, immaterial, and prejudicial.

None of the parties dispute the fact that the agreement into which they entered is silent as to the specific duration of the agreement. However, this fact gives rise to the point of contention.

Bayer and Acroloc assert that absent an express time of duration for this contract, the contract must be deemed terminable at will. In contrast, Miller asserts that the objective intent of the parties was that the agreement would be of "long standing duration," and that this intent was confirmed by the Sullivan letter. Miller asserts that at the very least, the intention of the parties was that the contract would be enforced for a three year period.

▆▆▆ The first and critical issue before this Court is whether the agreement entered into between the parties, which is admittedly silent as to duration, is a contract terminable at will. As a general proposition of law, under Illinois law, contracting parties may terminate at will if their contract contains no specific term of duration. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1012 (7th Cir.1985). A duration term need not specify a date or period of time; it can identify some event which will signal termi-nation, even if it is not clear, ex ante, when that event will take place. *First Commodity Traders v. Heinold Commodities,* 591 F.Supp. 812, 815–16 (1984).

In *First Commodity Traders v. Heinold Commodities* (hereafter *FCT*), the defendant contended that the contract between the parties did not contain a duration term. However, the plaintiff contended that the agreement did contain a term, and that the term was set forth in language of the contract which stated: "The parties agreed that the relationship would continue so long as it remained profitable ... and otherwise could be terminated only for cause;" "Heinold shall pay compensation to [FCT] dependent upon profitable operation of the branch office and the total cash and open trade equity of the branch." *Id.* at 816.

Judge Getzendanner, the district court judge, held that this language in the contract, directed at defining FTC's compensation, did not establish that profitability shall determine the duration of the agreement. *Id.* Although the court agreed that this language did indicate that the parties *did not intend* to contract terminable at will, the court concluded that in the absence of a cognizable duration term, a contract will be terminable at will by operation of law, whether or not that was the parties' specific intent. *Id.*

In a slightly different setting, employment contracts, the Illinois courts have addressed to what extent agreements between an employer and employee regarding bonus and annual salary constitute a term of duration. *Mann v. Ben Tire Distributors, Limited,* 89 Ill.App.3d 695, 44 Ill.Dec. 869, 411 N.E.2d 1235 (4th Dist.1980). In *Mann,* the plaintiff, an employee of the defendant, was given a document by his employer which set forth his bonus, which provided for and required calculation on an annual basis. It was determined that the bonus calculation could not be ascertained on a period less than one year. *Mann v. Ben Tire Distributors, Limited,* 44 Ill.Dec. at 870, 411 N.E.2d at 1236. The plaintiff argued that the time span for financial reckoning should be equated with a term for duration of employment. *Id.* 44 Ill.Dec.

at 871, 411 N.E.2d at 1237. Further, the plaintiff argued that the employer's promise of annual review indicated the intent of the parties to enter into a one year contract. *Id.*

The court noted that it is a long standing principle in Illinois that hiring at a monthly, or even an annual salary (if no period of duration is specified), is an employment contract terminable at will. *Id.* 44 Ill.Dec. at 870, 411 N.E.2d at 1236. However, the court recognized that in certain circumstances guarantees made by an employer sufficiently established a term of duration. *Id.*

Citing to *Grauer v. Valve and Primer Corporation*, 47 Ill.App.3d 152, 5 Ill.Dec. 540, 361 N.E.2d 863 (1977), the court stated that a statement by the employer guaranteeing the plaintiff a minimum of $22,500 a year, in addition to statements concerning annual review, constituted a one year contract. *Mann v. Ben Tire Distributors, Limited*, 44 Ill.Dec. at 870, 411 N.E.2d at 1236. The court noted that no such language was present in the *Mann* agreement. *Id.* Thus, the court held that whether the document was evaluated within the four corners or with the aid of surrounding circumstances, it was an employment arrangement terminable at will by either party. *Id.*

In the present case, Miller appears to make an argument similar to the one made in *FCT.* Miller asserts that the language in the contract, which defines Miller's compensation under the contract, constitutes a term of duration.

 It is the Court's opinion that pursuant to the position of the district court in *FCT*, Miller's contention fails. Recognizing that it may have been the intention of these parties to create a contract which is not terminable at will, "... in the absence of a cognizable duration term, the contract will be terminable at will by operation of law."

Even in the absence of an express term of duration, Illinois courts have held that when no termination date is specified in a contract, the courts may look to surrounding circumstances to discover the intention

of the parties. *Adkisson v. Ozment*, 55 Ill.App.3d 108, 12 Ill.Dec. 790, 793, 370 N.E.2d 594 (5th Dist.1977). A contract may be construed to continue until the happening of a specific event, if that appears to have been the intention of the parties. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1012 (7th Cir. 1985). See, *Ricke v. Ricke*, 83 Ill.App.3d 1115, 39 Ill.Dec. 598, 603, 405 N.E.2d 351 (1980). Where a contract is terminable upon the occurrence of some event, neither party may terminate at will. *FCT v. Heinold Commodities*, 766 F.2d at 1012.

In the *FCT* case, when heard before the Seventh Circuit, the court addressed the issue of whether a contract entered into by the parties in that case was terminable upon the happening of a specific event. The FCT and Heinold agreement provided: "[E]ither party may unilaterally terminate this agreement for a breach of any of the paragraphs of this agreement."

The court found that considering the circumstances and the nature of the agreement, there was an indication that the parties' intent was to create a relationship terminable for a breach of contract, rather than terminable at will. *Id.* at 1012. The court considered not only the contract before it, but also previous contracts entered into between those parties prior to the termination of the contract at issue, and the fact that those contracts contained a specific "at will" termination clause. *Id.*

Similarly, in *Ricke v. Ricke*, supra, the parties entered into a lease agreement, which contained a provision for an option to purchase the leased machinery. The court recognized that ordinarily under Illinois law, a contract is terminable at will where that contract fails to contain a provision for duration. *Ricke v. Ricke*, 39 Ill.Dec. at 603, 405 N.E.2d at 356. However, the court concluded that where an option to purchase is not an independent undertaking, but is an integral part of the lease, neither the provision referring to the option nor the provision referring to the lease may be construed as independent covenants. *Id.*

The court held that the lease's duration was not an indefinite period of time; rather, it could be terminated by either party upon or after the occurrence of the event, namely the exercise of the option on October 1, 1978. *Id.* The court found that the specified date by which the option had to be exercised was sufficient to fix the term of the lease agreement. *Id.*

The court asserted that its holding was the only reasonable interpretation of the contract, for to hold otherwise would have made the option provision meaningless. *Id.* The court stated that it is not likely that the defendant would have leased the equipment, paid rent and received a credit against the purchase price, if the lease was terminable before October 1, 1978, which was the first time at which the option could be exercised. *Id.* Considering these factors together, the court concluded that it was abundantly clear that the lease agreement was not terminable at will, but at the earliest time, terminable at the expiration of the option period, October 1, 1978.

It is this Court's opinion that in the cases where courts have found that surrounding circumstances gave rise to a term of duration in a contract, those contracts contained provisions in which a specific event could be identified within the four corners of the contract which permitted termination. The Court has not found any case in which the courts have found a contract to be terminable at a certain point in time or upon the happening of a certain event, where that event is not ascertainable from the four corners of the document. Therefore, consistent with the cases discussed above, the Court finds that the contract in the present case does not contain the type of specific event or happening which would properly lead the Court to the conclusion that the contract, in its present form, contains a term of duration.

Further, even though the contract does contain a discussion of Miller's compensation, the Court finds that this discussion of compensation is not of such a nature as to establish a term of duration. As held by the district court in *FCT* and Illinois Appellate Court in *Mann v. Ben*, contract language pertaining to compensation of one party is not alone sufficient to establish a term of duration.

■ The Court notes that the contract theory of partial performance is not relevant to the disposition of this case. Miller and the Defendants had an ongoing relationship, whereby Miller was periodically compensated for the machinery sold by it. This situation is distinguished from the partial performance and reasonable reliance case where one party has totally or substantially performed his or her part of the bargain in reliance upon the belief that the other party will subsequently fulfill his or her obligation.

For the reasons previously discussed, the Court finds that the contract entered into by the parties, in the present case, is a contract terminable at will. Therefore, the Acroloc and Bayer Motion to Dismiss Count I of Miller's Complaint is GRANTED, because a breach of contract claim of this nature cannot be sustained where both parties had the right to terminate the contract at any time.

■ As to Count II of the Complaint, the Acroloc and Bayer Motion to Dismiss contends that Miller's request for punitive damages in Count II of the Complaint must be stricken. This assertion is founded upon Acroloc's and Bayer's characterization of Count II as a claim for breach of contract.

It appears undisputed that punitive damages are not recoverable for a breach of contract under Illinois law. *Morrow v. L.A. Goldschmidt Association*, 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986). The Illinois Supreme Court expressly held "[R]ecovery for solely economic losses is more appropriately governed by contract, rather than tort law principles." *Morrow v. L.A. Goldschmidt Association*, 96 Ill. Dec. at 942, 492 N.E.2d at 184, citing *Moorman Manufacturing Company v. National Tank Company*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). However, in its response to Defendants' Motion to Dismiss, Miller asserts that his request for punitive damages is not based upon a breach of contract; rather, it is based upon

a tortious breach of duty identified as breach of fiduciary duty, tortious interference with contractual relations, or retaliation for his exercise of the right to redress in the courts.

After reviewing the pleadings and the case law set forth in the pleadings, the Court finds it difficult to ascertain the true nature of the claim alleged by Miller in Count II. However, the Court does conclude that Count II does allege something other than a breach of contract claim.

On November 18, 1987, this Court entered an order directing Miller to supplement the record with a pleading which specifically identified which Illinois tort he was alleging in Count II. In an attempt to comply with this directive, Miller filed a pleading which states:

"Plaintiff alleges the following torts under Illinois law in Count II of the Amended Complaint:

1. Breach of trust premised on the following alternative theories:

(a) Breach of the fiduciary obligations of good faith, loyalty, and fair dealing by Defendants.

(b) Alternatively, if the court accepts Defendants contention that Defendants have no fiduciary duties to Plaintiff, breach of confidential relation giving rise to a constructive trust.

2. Tortious interference with contract. Defendants have answered this claim (see docket number 12 filed on July 21, 1987).

3. Retaliatory tort—unexcused refusal to pay the undisputed commission due Plaintiff in retaliation for Plaintiff's exercise of his bid for a redress in the courts contrary to the public policy of Illinois warranting imposition of punitive damages.

(20–30 of Count II of Amended Complaint)"

Despite this filing, Count II of Miller's Complaint is clearly in violation of Federal Rule of Civil Procedure 10(b) because it alleges a multiplicity of claims in one count. Therefore, Count II of the Complaint is DISMISSED for violation of Federal Rule of Civil Procedure 10(b), and Mil-

ler is GRANTED leave to replead these claims in separate counts if it so chooses. Further, in light of this ruling, the Defendants' Motion to Dismiss Count II of the Complaint is MOOT. Similarly, the Defendants' Motion to Strike Miller's Count II request for punitive damages is also MOOT.

It is ordered that Acroloc's and Bayer's Motion to Dismiss Count I of the Complaint is GRANTED.

Further, Count II of the Complaint is in violation of Federal Rule of Civil Procedure 10(b), and is therefore DISMISSED. Plaintiff is given 7 days to replead Count II in conformance with this Order.

Further, Acroloc's and Bayer's Motion to Dismiss Count II of the Complaint is MOOT.

Further, Acroloc's and Bayer's Motion to Strike the Count II punitive damage request is MOOT.

Further, Acroloc's and Bayer's Motion to Strike all references to settlement and compromise is MOOT.