*In re* MARRIAGE OF ROBERT I. OLSEN, Petitioner-Appellant, and DENISE L. OLSEN, Respondent-Appellee.

First District (5th Division)   No. 1—91—2400

Opinion filed May 8, 1992.

Howard Bernstein, of Bernstein & Rochell, Ltd., of Buffalo Grove, for appellant.

Joseph A. Durkin, of Palatine, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Robert I. Olsen (Mr. Olsen) appeals from a circuit court order dated April 24, 1991, and the order denying his motion to reconsider, contending that the trial court incorrectly interpreted certain provisions of the marital settlement agreement contained within his judgment of dissolution of marriage.

The facts are as follows.

On March 23, 1988, Mr. Olsen petitioned the circuit court of Cook County to have his marriage to Denise L. Olsen (Mrs. Olsen) dissolved. The cause was uncontested and a judgment of dissolution of marriage was entered on April 6, 1988. Incorporated into the judgment was a detailed "Marital Settlement Agreement," which was signed by both parties and which addressed, among other things, the custody, support and maintenance of the parties' two children.

The agreement provided that each of the parties would be awarded the custody of one of their two children and that Mr. Olsen would pay Mrs. Olsen $495 per month in support for the child in her custody. This amount was based upon the fact that at the time of the decree Mr. Olsen's net income was $625 per week and Mrs. Olsen's net income was $300 per week. In addition to the set amount of $495, the agreement further provided in paragraph 2.2 that:

> "Husband shall also pay to Wife a sum equal to 20% of any bonus he receives so long as Wife retains custody of [child] and until [child] reaches 18 years of age."

The agreement also contained other provisions pertaining to the handling of income tax returns and the division of property and real estate.

In February 1990 Mrs. Olsen filed a petition with the court asking that Mr. Olsen be directed to show cause why he should not be held in contempt for failure to comply with certain provisions of the marital agreement. Specifically, Mrs. Olsen requested (1) that Mr. Olsen pay her 20% of his 1988 and 1989 bonuses, (2) an increase in child support, (3) reimbursement for extraordinary medical expenses in the amount of $450, and (4) automatic withholding of child support from Mr. Olsen's wages. Mr. Olsen did not appear at a hearing held March 1, 1990, and an *ex parte* order was entered on that date granting Mrs. Olsen's petition.

On March 23, 1990, Mr. Olsen filed a motion to have the *ex parte* order vacated. In addition, Mr. Olsen petitioned the court for a reduction of his child support obligation based upon the fact that he had become unemployed. He also requested reimbursement of $1,592 from Mrs. Olsen for income taxes due for the 1986 tax year.

A hearing was held on October 31, 1990, at which time the court agreed to vacate the March 1, 1990, *ex parte* order. In addition it was agreed that two of the issues in Mrs. Olsen's petition, *i.e.*, the request for an increase in child support and for automatic withholding, had been mooted by Mr. Olsen's loss of employment. The court dismissed these issues without prejudice, granted Mrs. Olsen $250 for extraordinary medical expenses and continued all other issues until December 4, 1990. An order to this effect was issued on November 1, 1990.

At the December 4, 1990, hearing both parties testified and Mrs. Olsen presented a certified public accountant (CPA) as a witness. Subsequently, both parties filed written memoranda with the court, and on January 25, 1991, the court issued its findings, which were then incorporated into a written order dated April 24, 1991. In this order the court: (1) found that payments made by Mr. Olsen from "funds received by him as dividends" were voluntary payments and not to be credited to amounts due under the judgment of dissolution, (2) found that the judgment of dissolution required Mr. Olsen to pay 20% of the gross of the bonuses he received between August 1988 and February 1990, (3) granted a reduction in child support from $495 to $240 effective March 1990, and (4) denied Mr. Olsen's petition for reimbursement from Mrs. Olsen for 1986 tax liability.

Mr. Olsen filed a motion for reconsideration, which was denied by the court. He now brings this appeal, raising four issues: (1) whether the trial court erred by finding that certain overpayments he made should not be credited toward his child support obligation, (2) whether the trial court erred by interpreting the marital agreement as requiring him to pay 20% of the gross of his bonuses, as opposed to 20% of

his net bonuses, (3) whether the trial court abused its discretion by ordering him to pay $240 per month child support while he was unemployed, and (4) whether the trial court erred by refusing to require Mrs. Olsen to contribute 50% of the tax liability for the 1986 tax year.

■ We shall consider the first two issues raised by Mr. Olsen together because they are related to one another. Initially we note that Illinois courts have adopted the general rule that no credit shall be given for any voluntary overpayment of child support, even if the overpayment was made because the party was under the mistaken belief that the payment was legally required. (*Harner v. Harner* (1982), 105 Ill. App. 3d 430, 434 N.E.2d 465.) The rationale for this rule is that such a credit would be tantamount to allowing one party to unilaterally modify the divorce decree and could result in a future deprivation. (*Harner*, 105 Ill. App. 3d at 433.) Exceptions to the general rule have been recognized, but only where equity demands and the credit would not work a hardship, such as where the parties entered into a separate agreement whereby the party entitled to support agrees to allow the party providing the support to pay certain necessary expenditures in lieu of the support allotment and where the father has been in substantial compliance with the spirit and intent of the divorce decree. (See *Farmer v. Farmer* (1978), 147 Ga. App. 387, 249 S.E.2d 106.) There is also an exception for involuntary overpayment where the overpayment results from a court-ordered wage reduction.

Although Mr. Olsen agrees with the general rule, he claims that equity demands an exception to the rule in this case. We tend to agree.

The whole controversy arose when Mrs. Olsen contended that Mr. Olsen had failed to pay "20% of any bonus" he received in 1988 and 1989, as required by the provision contained within paragraph 2.2 of the marital agreement quoted above. By virtue of this claim, the provision became the subject of much debate. To understand this controversy, a bit of background information is helpful.

Mr. Olsen had been employed as a construction supervisor for a company owned by his father-in-law. As salary he received a base pay plus "bonuses," which were based upon the company's earnings. Additionally, Mr. Olsen owned 3% stock in the company, from which he derived "dividends" (later referred to as S corporation earnings). According to the parties' testimony, until Mrs. Olsen's petition was filed, both Mr. and Mrs. Olsen had been interpreting the "20% of any bonus" provision to mean that Mr. Olsen was to pay Mrs. Olsen 20% of

the net amounts he received as his "bonuses" as well as his "dividends."

At the October hearing, Mr. Olsen's counsel asserted that in 1988 Mr. Olsen received three "bonuses" totaling $14,288 and "dividends" totaling $8,258 and that Mr. Olsen had paid to Mrs. Olsen 20% of the net of these amounts. He claimed that Mr. Olsen determined the amount he must pay to Mrs. Olsen by computing the net amount of his bonus and/or dividend, arrived at by taking the actual or gross amount and subtracting 28% (Mr. Olsen's tax bracket). He then paid Mrs. Olsen 20% of the resulting amount.

At the same hearing, Mrs. Olsen's counsel informed the court that the dispute was over the calculation of the 20% of the bonuses and dividends. Counsel stated that Mrs. Olsen wanted the court to determine the "actual" tax deductions that were made on the bonuses and dividends, as opposed to the "theoretical" 28% tax deduction, and then take 20% of that figure. Counsel did not contend that the gross amount should be used. In fact, counsel presented a CPA as a witness to testify to the computations for determining the "actual" deductions that were made to the bonuses and dividends. The CPA began, but did not complete, his testimony regarding this matter, and the hearing was continued until December 4, 1990.

On December 4, 1990, the hearing opened with Mr. Olsen's testimony regarding his petition. He asserted that he had been forced from his employment by his father-in-law and was now unemployed and unable to meet his support obligations. He testified as to his income and expenses from the date of his unemployment in March 1990. He also testified concerning the additional taxes he had paid on the 1986 tax return, for which he was requesting reimbursement from his wife. However, he did not testify regarding the bonuses and dividends he received or the amounts actually paid to Mrs. Olsen during 1988 and 1989.

Following Mr. Olsen's testimony, the CPA testified that Mr. Olsen's tax returns revealed the following:

|  | Bonus (1099 income) | Dividend (S corporation) | Total | 20% of Total |
|---|---|---|---|---|
| 1988 | $14,300 | $10,693 | $24,993 | $4,996 |
| 1989 | $ 8,258 | $ 2,476 | $10,734 | $2,147 |

The CPA did not present any testimony regarding the "actual" tax deductions made, as Mrs. Olsen had previously indicated he would do. Nor did he indicate the amounts paid by Mr. Olsen during the period in question.

Lastly, Mrs. Olsen testified. She indicated that her petition requested a clarification of the provision regarding bonuses and that, although Mr. Olsen had paid her 20% of most bonuses he received, her dispute was over the amount she received. She also claimed that there had been one bonus of $3,600 that Mr. Olsen received in December 1989 for which she did not receive any payment. Other than the one $3,600 bonus, however, she admitted that she had received payments from Mr. Olsen whenever he received a bonus or S corporation earnings. She could not state what specific amount she was requesting from Mr. Olsen or why she felt the amounts she had received from Mr. Olsen had been incorrect.

Mrs. Olsen also denied owing Mr. Olsen any reimbursement for the 1986 tax liability, claiming that the IRS had deducted $472 from a refund check for a subsequent tax year and that Mr. Olsen had deducted $1,000 from one of his 20% child support payments made to her.

Neither party presented the court with an accounting of the support payments Mr. Olsen had made to Mrs. Olsen during 1988 and 1989. Instead, both parties submitted memoranda to the court in January 1991. In Mrs. Olsen's memorandum she indicated the following figures:[1]

### BONUSES

| Date | Amount | Amount paid to Mrs. Olsen |
| --- | --- | --- |
| August 1988 | $4,500 | $666 |
| December 1988 | $5,000 | $740 |
| February 1989 | $4,800 | $691 |
| August 1989 | $4,000 | $576 |
| December 1989 | $3,600 | -0- |

### DIVIDENDS

| Date | Amount | Amount paid to Mrs. Olsen |
| --- | --- | --- |
| April 1989 | $11,048.71 | $384 |

Mrs. Olsen argued in the memorandum that the term "bonus" in

---

[1]The memorandum also included figures on the amount of bonuses and dividends Mr. Olsen received in February 1990 and the payments he made to Mrs. Olsen in conjunction with them. Specifically, Mrs. Olsen represented that Mr. Olsen received $3,600 as a bonus and $2,613 as a dividend in February 1990 and he had given her $682 in connection with these monies received.

Because 1990 was not included in Mrs. Olsen's petition, Mr. Olsen did not address amounts received or paid in 1990 and the CPA did not testify regarding 1990 figures. Therefore, these amounts are not verifiable. We note, however, that Mr. Olsen sold his stock in March 1990 after he lost his employment with the company. Therefore, dividends are no longer an issue after this time.

the marital settlement agreement included the S corporation dividends and that Mr. Olsen should be estopped by his previous actions to deny that these dividends were part of the equation in determining his support payment pursuant to the "bonus" provision. Mrs. Olsen then went on to state that the total amount she was claiming in child support was $896.31, computed as follows:

(1) $184.91 as her portion of the 20% of Mr. Olsen's *net* dividend from April 1989. This figure was arrived at using the following equation:

$11,048.71 x 29% = $7,844.59 x 20% = $1,568.91 - $384 (already paid by Mr. Olsen) - $1,000 (1986 tax liability deduction) = $184.91.

(2) $511.20 representing 20% of the *net* December 1989 bonus. This figure was arrived at using the following equation: $3,600 x 29% = $2,556 x 20% = $511.20.

Mrs. Olsen further argued in her memorandum that child support should not be reduced despite Mr. Olsen's loss of employment because of assets he owned and that she did not owe Mr. Olsen any reimbursement for the 1986 tax liability, but, rather, he owed her a rebate of $304.30.

Mr. Olsen's memorandum did not itemize the bonuses and dividends he had received in 1988 and 1989, nor did it itemize the amount of payments he made to Mrs. Olsen based upon the bonuses and dividends. Mr. Olsen merely contended that the term "bonus" did not include dividends and that any payments he had made in conjunction with his dividend payments should be tallied into the amount due for child support pursuant to the "20% of any bonus" provision. He agreed that any payments in excess should be deemed voluntary, and as such, nonrefundable.

The only figures presented by Mr. Olsen were as follows:

*1988*
$10,693[2] (Total Bonuses) x 29% (tax bracket) = $7,592 (Net Bonuses) x 20% = $1,518.40 (Amount due to Mrs. Olsen) $2,448.64 (Amount paid) = OVERPAYMENT OF $930.24

*1989*
$8,258 (Total Bonuses) x 29% (tax bracket) = $5,863.18 (Net Bonuses) x 20% = $1,172.64 (Amount due to Mrs. Olsen) $1,651 (Amount paid) = OVERPAYMENT OF $478.36.

---

[2]It is believed that this figure was used in error since Mr. Olsen testified at the hearing that his 1988 bonuses totaled $14,300 and the CPA verified this amount. It appears that the figure was confused with the amount of dividends received in 1988, which did total $10,693 according to the CPA's testimony.

As can be seen, what at first would appear to be a rather simple matter is in actuality very complicated and confusing. The trial court's ruling further muddied the water. The trial court determined that "dividends" were not part of the "bonus" referred to in paragraph 2.2 of the marital agreement, but that any payments Mr. Olsen had made from funds received as dividends would not be credited to the amounts due pursuant to the "20% of any bonus" provision of the settlement agreement. Then the court went on to find, for no apparent reason and contrary to both parties' assertions in their memoranda, that the term "bonus" meant gross bonus, as opposed to net bonus. The court also found, without explaining how it arrived at its figures, that the bonuses received by Mr. Olsen between August 1988 and February 1990 totaled $25,500, that 20% of that amount equalled $5,100 and that Mr. Olsen had paid $3,191. Therefore, the court found that Mr. Olsen owed Mrs. Olsen $1,745.

We agree that the 20% provision in the marital agreement did not require Mr. Olsen to pay 20% of the dividends he received. Another provision of the marital agreement made the stock from which Mr. Olsen derived the dividends his sole possession. However, we see no reason why the child support payments made from funds derived from these dividends should not be credited to him when determining the amounts due, if any, pursuant to the "20% of any bonus" provision.

This is an unusual situation, not directly within the parameters of the general rule. It is obvious that the parties mutually misunderstood the marital agreement provision and that Mr. Olsen paid, in good faith, child support from both his bonuses and dividends, believing that he was required to do so by the 20% provision. Nevertheless, when Mrs. Olsen claimed that she did not receive the correct amounts in connection with the 20% provision and the court was asked to interpret the provision to determine whether a deficit existed, Mr. Olsen discovered his error. Under these circumstances, it would seem that all the money Mr. Olsen paid in connection with the 20% provision should have been considered, regardless of the source of the funds.

■ We believe our decision to credit Mr. Olsen with these payments is equitable. Mrs. Olsen asked the court to determine whether she had received less than her rightful share of child support in 1988 and 1989 pursuant to the 20% provision. Mr. Olsen showed that not only had he complied with the provision, but that he paid far in excess of the amount required. Mr. Olsen did not ask for overpayments to be refunded to him or applied toward the fixed amount of support he owed each month. Because the overpayment is only being applied to

the amounts owed under the 20% provision for 1988 and 1989 and no future deprivation or hardship would accrue to either Mrs. Olsen or the child to be supported, the amounts paid from dividends should be included when determining whether a deficit existed in Mr. Olsen's child support payments pursuant to the 20% provision for the years of 1988 and 1989.

Finally, we see no reason to find that Mr. Olsen must be estopped by his previous behavior to deny that the dividends were not part of the provision. Although Mr. Olsen mistakenly believed that he was required to pay 20% of his dividends, once the 20% provision became contested he realized his mistake and never conceded that dividends were included in the term "bonus." This is what differentiates the next issue.

The next issue is whether the trial court erred when it found that "a sum equal to 20% of any bonus" meant 20% of the gross amount of his bonus and not 20% of the net amount of the bonus.

The terms of a marital agreement are to be interpreted like any other contract. (*In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 469 N.E.2d 381.) If the terms of the contract are clear and unambiguous, the court shall construe the agreement as written. (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 405 N.E.2d 351.) If the agreement is unclear or ambiguous, however, the court must construe the document to give effect to the intention of the parties, ascertained by an examination of the facts and circumstances surrounding the formation of the agreement. *Ricke*, 83 Ill. App. 3d at 1118.

■ In this case, although there does not appear to be an ambiguity in the terminology, Mrs. Olsen conceded that the provision required 20% of the net amount of any bonus received by Mr. Olsen. In her memorandum to the court she asked for her 20% share of certain bonuses and calculated the amount due using the net figure. For this reason we believe that the court was remiss in finding that the provision called for 20% of the gross amount of any bonus.

Although this court would have been happy to have made the necessary computations, taking into account our findings above and disposed of the case without the need to remand to the trial court, we are unable to do so because the record lacks sufficient information. Despite the fact that Mr. Olsen conceded that the amount of bonuses he received in 1988 totaled $14,300, his memorandum states that the total bonuses for 1988 amounted to $10,693. Also, even though the CPA Mrs. Olsen presented as an "expert witness" at the hearing testified regarding Mr. Olsen's bonuses and dividends for 1988 and 1989, she, inexplicably, included figures for 1990 in her memorandum. Fur-

thermore, if one tallies the figures Mrs. Olsen presented to the court in her memorandum regarding Mr. Olsen's bonuses and dividends for 1988 and 1989, they do not add up to the amounts testified to by her own expert witness. More importantly, both parties disagree as to the amount that Mr. Olsen paid in conjunction with the 20% provision. No matter how this court adds the figures listed by both parties, we are unable to find a number common to both parties' evidence. The trial court determined an amount that represented Mr. Olsen's payments, but did not explain how it arrived at its figure. Therefore, regrettably, we must remand to the trial court so that it may determine the net amount of bonuses Mr. Olsen received in 1988 and 1989, compute 20% of the figure and then determine the amount of payments made by Mr. Olsen during that time period and deduct them from the amount owed to discover whether any deficit exists.

Next, despite the fact that the trial court changed the terms of the marital settlement agreement in Mr. Olsen's favor, reducing his support obligation from $495 to $240 per month, Mr. Olsen charges in his third issue that the trial court failed to consider the provisions of Illinois law in setting his support payments during his period of unemployment.

Motions for the modification of judgments awarding child support are governed by section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 510(a)). According to this section of the Act, a modification may only be had upon the showing of a "substantial change" in circumstances. The determination of the proper amount of support lies in the sound discretion of the trial court and its decision will not be overturned unless it is against the manifest weight of the evidence, thereby indicating an abuse of discretion. (*In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641.) Guidelines for determining the minimum amount of support have been set forth in section 505(a)(1) and suggest that, for one child, 20% of the supporting party's net income is appropriate. Deviation from these guidelines may be had upon the consideration of relevant factors and the factors to be considered in a modification proceeding are the same factors which may be considered when formulating an original support award. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) These factors include: (1) the financial resources of the child; (2) the financial resources and needs of the custodial parent; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child and his educational needs;

and (5) the financial resources and needs of the noncustodial parent or parents. Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(2).

■ In the present case the court indicated that it had considered the relevant factors and, in doing so, determined that Mr. Olsen's support obligation should be reduced by more than half, from $495 to $240 per month. Although Mr. Olsen protests that this support award is not appropriate, he does not suggest what amount would be appropriate. He apparently feels that because he became unemployed his support obligation should be completely abrogated. However, the trial court found that although Mr. Olsen had no income from employment, he had other resources, *i.e.*, unemployment benefits in the amount of $520 every two weeks, income from the sale of stock and the equity in his home, which warranted a reduced support award of $240 per month. We do not find that the trial court abused its discretion in so finding.

We realize that Mr. Olsen complains that the trial court could not have considered all of the relevant factors because they were not before the court. However, Mr. Olsen apparently forgets that it was he who petitioned the court for a modification and, therefore, the onus was on him to bring before the court the facts concerning the change in circumstances that would warrant the reduction in support. Therefore, by the omission of evidence on the other factors listed in section 505 of the Act, the court could assume that these factors had not changed. It was then free to consider only the evidence before it concerning the changed circumstances when determining whether it was necessary to fashion a new support award. The trial court did this and determined that Mr. Olsen had the means to continue to provide a modest support contribution for the child in Mrs. Olsen's custody. We do not feel that this decision was against the manifest weight of the evidence. Consequently, from the date that Mr. Olsen was unemployed until he obtained new employment, his support obligation should be reduced to $240 per month.

As an aside, we note that it was revealed in oral argument that Mr. Olsen did accept new employment and that the child who had been in Mrs. Olsen's custody and for whom support was being paid by Mr. Olsen is currently residing with Mr. Olsen. An agreed order to this effect was apparently issued by the court below in July 1991, although it is not part of this appellate record and Mrs. Olsen's appellate counsel seemed unaware of this fact. Consequently, principles of equity might be better served if the entire matter were remanded so that the trial court could consider the obligations of the parties in light of the facts as they exist at the present time.

■ The last issue involves Mrs. Olsen's responsibility for the 1986 tax liability. Mr. Olsen contends that the trial court erred in not requiring Mrs. Olsen to pay 50% of the 1986 tax liability. However, this is not exactly what the trial court held. The trial court held that Mr. Olsen's request for reimbursement for income tax liability prior to 1990 was denied, and it appears to this court that the trial court denied Mr. Olsen's request for reimbursement based upon Mrs. Olsen's testimony that the IRS had already deducted $472 from a tax refund check owed to her for a subsequent year and that Mr. Olsen had deducted $1,000 from support payments to her to cover the remainder of her liability for the 1986 taxes owed.

However, we note that on appeal, although Mr. Olsen concedes that Mrs. Olsen is entitled to credit for the $472 withheld by the IRS, he disputes that the $1,000 he withheld should be credited to her because the $1,000 came out of a 20% payment he would have made from funds received as dividends. Since the court found that he wasn't required to pay any amount out of his dividends, he argues that Mrs. Olsen can't take advantage of the fact that he withheld $1,000 from money she was not entitled to in the first place. The trial court did not resolve this matter or determine whether Mrs. Olsen had met her obligation under the provision.

Because this case must be remanded on other matters and because it is unclear what the actual tax liability for 1986 amounted to after a refund from the government for removal of the penalties, we remand to the trial court to determine the Olsens' actual tax liability for the 1986 tax year, divide the liability equally and then determine the proper credits to which Mrs. Olsen is entitled. We are unable to determine, due to a lack of information, whether any part of the $1,000 withheld from Mrs. Olsen from support payments due from Mr. Olsen should be credited to the tax liability.

For all the reasons stated above, we remand this case to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

LORENZ and GORDON, JJ., concur.